Baker vs. Estate of McLeod.

BAKER, Administrator, Appellant,. vs. THE ESTATE OF McLEOD, Respondent.

*March 18 — May 5, 1891.*

*Construction of will: Vested estate: Condition subsequent.*

A testator devised and bequeathed his whole estate to his executor, in trust to pay debts and expenses; to pay $500 to Miss R., who had the care of his only daughter, A.; and to execute the will as therein directed, with power of sale and reinvestment; and directed such executor to remain in the possession of all the residue of the estate, and of the rents and income and proceeds thereof, until his daughter A. should attain the age of twenty-one years, and from time to time "to pay and apply the whole of such rents, profits, and income, or such part thereof, or such part of the whole estate, as he should deem for her advantage, for and towards her maintenance and education;" and that all of the estate not so applied should be paid or transferred to his said daughter "as and when she should attain the age of twenty-one years," but if she should die under that age, then to Miss R. and a certain church; and he also "committed the tuition, nurture, and custody of the person of" A. to Miss R. as guardian, "for such time as she shall continue unmarried and under the age of twenty-one years," or if Miss R. should die, then to his executor for the remaining period. *Held,* that the estate vested in A. immediately upon the death of the testator, subject only to a condition subsequent, which must be construed to mean that, in case she should die under age and *without issue,* then the gift over should become effectual; and that, though she died under the age of twenty-one years, yet as she left a child surviving, that child took the estate by inheritance from his mother.

APPEAL from the Circuit Court for *Brown* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

It appears from the record that February 6, 1871, Alexander McLeod died at the village of West De Pere, in Brown county, testate, leaving a will executed January 30, 1871, and which was admitted to probate March 6, 1871; that said Alexander McLeod, in and by said will, gave, bequeathed, and devised all of his estate, both real and personal, to M. De Witt Peak, of Green Bay, as executor thereby appointed, and to his executor or executors, or such other trustee or trustee as might otherwise be lawfully appointed, in trust to pay debts and expenses, and execute said will in the manner therein stated, and with power of sale and reinvestment; that it was therein ordered and directed, in effect, that, as soon as the "reasonable necessities" of his child therein named would permit, and within one year after the death of said testator, there should be paid to Miss Sarah Ritchie, who since the death of his wife had had the principal care of his said child, the sum of $500; that said will contained the following provisions, to wit:

" And I do further order and direct that the said M. De Witt Peak, my said executor in trust, his executor or executors, or such other trustee or trustees as aforesaid, at all times, until Annie May McLeod, who is my only child, shall attain the full age of twenty-one years, shall remain in possession of all the residue and remainder of my estate not required for payment of debts and expenses, or of the aforesaid legacy of five hundred dollars, or in possession of the proceeds thereof, and in receipt and possession of all the rents, profits, and income thereof, and shall from time to time pay and apply the whole of such rents, profits, and income, or such part thereof, or such part of the whole estate, as he or they shall deem for the advantage of my

child, for and towards the maintenance and education of her, the said Annie May McLeod. And I further order, direct, and declare that all my aforesaid estate, or the proceeds thereof, with the rents, profits, and income thereof, so far as the same shall not have been paid or applied as aforesaid, shall be paid and transferred to my said child, the said Annie May McLeod, as and when she shall attain the age of twenty-one years. But, if the said Annie May McLeod shall die under the age of twenty-one years, then all my aforesaid estate, or proceeds thereof, with the rents, profits, and income thereof, so far as not then paid, applied, or required for the purposes aforesaid, shall, immediately after her death, be paid, applied, and disposed of in the manner following, that is to say:

"*First.* The further sum of two thousand dollars shall be paid to the said Sarah Ritchie, if she shall then be still living; but, if the said Sarah Ritchie die before and during the minority of said child, the said sum of two thousand dollars shall sink into and form a part of my residuary estate.

"*Secondly.* The sum of eight thousand dollars" was, in effect, therein provided to be paid to the trustees of the First Presbyterian Society of Green Bay, in trust, nevertheless, for the purposes therein mentioned; that any residue of his said estate should, in the event stated, be retained by said executor, executors, or trustees, to his or their own use, in addition to all such compensation as should be allowed by law.

Said will also contained the following provisions: "I hereby commit the tuition, nurture, and custody of the person of my said child, Annie May McLeod, for such time as she shall continue unmarried and under the age of twenty-one years, unto the said Miss Sarah Ritchie, hereby nominating and appointing her, the said Sarah Ritchie, guardian of said child for the purpose of such tuition, nurture, and

custody; provided, however, that if the said Sarah Ritchie shall die before the expiration of the aforesaid term of her guardianship, then, from and after the death of said Sarah Ritchie, I commit such tuition, nurture, and custody for the residue of such term to the said M. De Witt Peak, whom, in such case, I nominate and appoint such guardian, as aforesaid, for the residue of such term, in addition to all the powers, trusts, and duties otherwise conferred or imposed upon him. I do hereby nominate and appoint the said M. De Witt Peak to be the guardian of said Annie May McLeod, for and during the period and term of her remaining unmarried and under age, in respect to the care, management, and disposition of such property and estate of said child as shall come or descend to her, by means of insurance upon my life, or otherwise than by means of this, my will; hereby declaring that the accountability of the said Peak in his capacity of guardian, in respect to property, shall extend only to such property and estate as last aforesaid."

Said deceased left him surviving a daughter, Annie May McLeod, who married one W. A. Leddy, and on May 14, 1888, gave birth to a child, the said George McLeod Leddy. June 27, 1888, the said Annie McLeod died, under the age of twenty-one years.

April 10, 1889, the county court for Brown county rendered judgment in said matter, by which it was adjudged that the residue of the estate of said Alexander McLeod be assigned as follows: To Miss Sarah Ritchie, $1,253.81; to the First Presbyterian Society of Green Bay, in trust for the purposes named in the will, $5,015.28. June 8, 1889, the said plaintiff, as such administrator and guardian, appealed from that judgment to the circuit court for Brown county. At the close of the trial of said appeal in the circuit court, and on March 17, 1890, the circuit court found, as matters of fact, in addition to the facts stated, that the

bequest in said will to said Sarah Ritchie of $2,000, and to the First Presbyterian Society of Green Bay of $8,000, were general bequests, and must abate proportionately, as the moneys in the hands of the administrator were insufficient to pay them in full; that said society was duly organized according to law, and had a duly-organized Sunday-school and library; and, as conclusions of law, that the will was valid; that the bequests to Sarah Ritchie and to the First Presbyterian Society of Green Bay were valid, lawful bequests, and that the proper disposition of the estate in the hands of the administrator was made by the county court, and that the judgment of that court should be affirmed. Judgment was thereupon entered accordingly, affirming the judgment of the county court, and remitting the same to that court for further proceedings. From that judgment, and the whole thereof, the plaintiff, as such administrator and guardian, brings this appeal.

*P. H. Martin* and *J. H. M. Wigman*, for the appellants. To the point that the will vested an estate in fee in the daughter, immediately upon the death of the testator, the mere enjoyment thereof being postponed until she attained the age of twenty-one years, cited numerous authorities besides those cited by the court.

For the respondent there was a brief by *L. B. Sale*, and oral argument by *C. E. Vroman* and *L. B. Sale*. Among other things, they contended that the intent of this will was to vest the estate in the executor, and that intent must govern. Sec. 2086, S. & B. Ann. Stats.; *De Wolf v. Lawson*, 61 Wis. 475; *Knox v. Knox*, 59 id. 172; *Melms v. Pfister*, 59 id. 192; *Gundry v. Est. of Henry*, 65 id. 565. It does not give to the trustee an absolute and unlimited power to dispose of the whole estate for the benefit of the testator's daughter, but, if it did in terms, that would not prevail over a different intention manifested in other parts of the will. *Jones v. Jones*, 66 Wis. 310; *Smith v. Bell*, 6 Peters, 68;

*Pinden v. Pinden,* 14 Ohio St. 251; *Benkers v. Jacoby,* 36 Iowa, 273; *Jenkins v. Compton,* 123 Ind. 117; *Doe v. Glover,* 1 Man. Gr. & S. 447; *Terry v. Wiggins,* 47 N. Y. 512; *Smith v. Van Nostrand,* 64 N. Y. 278; *Taggart v. Murray,* 53 id. 233; *Norris v. Beyea,* 13 id. 273; *Surnam v. Surnam,* 5 Madd. 123; *Trustees v. Kellogg,* 16 N. Y. 93; *Upwell v. Halsey,* 1 P. W. 651. The words "without issue" cannot be injected into this will, as it nowhere speaks of heirs, but shows an intent that the estate shall not go to the heirs of his daughter. 2 Jarman on Wills, 62; *Butterfield v. Hamant,* 105 Mass. 338; *McKeehan v. Wilson,* 53 Pa. St. 74.

CASSODAY, J. The testator's wife died before he did. At the time of his death he was about twenty-six years of age. Annie May was his only child, and at the time of his death she must have been less than four years of age. He executed his will only a week before he died, and apparently with the expectation of death's near approach. His anxiety for his little girl must, under the circumstances, have been very great. His tender regard for her is manifest in the will. He left $500 to Miss Ritchie, who had the principal care of her after his wife's death. He committed the tuition, nurture, and custody of the person of Annie to Miss Ritchie, who for those purposes was thereby appointed her guardian for such time as she should continue unmarried and under the age of twenty-one years. He provided that in case Miss Ritchie died before the expiration of that period, then that her tuition, nurture, and custody should be committed, for the remainder of said term, to his executor named. He necessarily put his estate into the hands of a trustee, with power of sale and reinvestment, to manage and control, until Annie should, in the eyes of the law, become capable of taking charge of it. He expressly provided that, after the payment of his debts, expenses, and the legacy mentioned, his trustee, named, or his successor,

should, until Annie attained the full age of twenty-one years, "remain in the possession of all the residue and remainder" of his estate, and the proceeds, and "all the rents, profits, and income thereof," and should "from time to time pay and apply the whole of such rents, profits, and income, or such part thereof, *or such part of the whole estate*," as he or they should deem for the advantage of his child, for and toward the maintenance and education of her, the said Annie; and that all of said estate, together with the proceeds, rents, profits, and income thereof, not so paid and applied during her minority, should "be paid and transferred" to "the said Annie May McLeod as and when she" should "attain the age of twenty-one years."

The manifest purpose of the provisions of the will thus referred to was to amply provide for the care, nurture, education, maintenance, and support of Annie, during her minority, and to preserve the remainder of the estate, with the rents, profits, and income thereof, for her benefit, and to pay over and transfer the same to her as and when she should attain her majority. Had the will stopped with those provisions, it would undoubtedly have been conceded that the equitable right to the estate was, during the life of Annie, vested in her, and upon her death descended to her heir at law. But it is claimed, in effect, that such purpose is defeated by the clause which provides, in effect, that, in case Annie should die under the age of twenty-one years, then such remainder of said estate should, immediately after her death, be paid, applied, and disposed of to Miss Ritchie and the society, as therein mentioned. By reason of that clause and the provisions of sec. 2086, R. S., it is claimed that neither the estate, nor any interest therein, ever vested in Annie; but that, upon the death of the testator, the whole estate vested in the trustee, subject only to the execution of the trust.

Such vesting of the estate, however, refers wholly to the

legal estate or .title.   This is apparent from the.next sec-
tion, which expressly provides that " the preceding section
shall not *prevent any person creating a trust*, from declaring
to whom the lands to which the trust relates shall belong,
in the event of the .failure or determination of the trust,
*nor shall it prevent him from granting or devising such
lands subject to the execution of the trust;* and every such
grantee shall have *a legal estate in the lands, as against all
persons* except the trustees and those lawfully claiming
under them."   Sec. 2087, R. S.   When such trust is created,
every estate and interest. not embraced in the trust, and
not otherwise disposed of, remains in or reverts to the per-
son creating the trust, or his heirs, as a legal estate.   Sec.
2088, R. S.; *Scott v. West*, 63 Wis. 562.   These sections are
consistent with a vested equitable interest in the *cestui que
trust*, and in fact " a legal estate in the lands, as against all
persons, except the trustees and those lawfully claiming
under them; " and especially that would be so as to per-
sonal property.   In the case cited, an extract from the
opinion of the court in *McArthur v. Scott*, 113 U. S. 340, is
quoted as follows:   "For many reasons, not the least of
which are that testators usually have in mind the actual
*enjoyment*, rather than the technical *ownership*, of their
property, and that sound policy as well as practical con-
venience requires that titles should be vested at the earliest
period, it has long been a settled rule of construction, in
the courts of England and America, that estates, legal and
equitable, given by will, should always be regarded as vest-
ing immediately, unless the testator has by very clear words
manifested an intention that they should be contingent
upon a future event."   63 Wis. 564, 565.   It is there fur-
ther stated, on the strength of authorities there cited, that
" where the time of payment or distribution is merely post-
poned for the convenience of the fund or property, or to ·
let in others, the vesting will not be deferred until that

Baker vs. Estate of McLeod.

period: . . . In such cases the question is whether the time named is annexed to the payment or to the gift itself. Where, in case of such a legacy, words of contingency or condition are used which may be construed as applying either to the gift itself or to the time of payment, courts are inclined to construe them as applying to the time of payment, and hold the gift as vested rather than contingent." *Ibid.* In that case the testator, after the death of his two daughters, who were named in the will as trustees, gave, devised, and bequeathed all the residue and remainder of his estate to his surviving grandchildren, and to the legal issue of any deceased grandchild or grandchildren, and to their heirs and assigns, forever, in equal parts; and it was held that the grandchildren living at the time of the testator's death took an immediate vested interest in the estate, subject to open and let in after-born grandchildren, and subject to being defeated altogether by death without issue during the lives of the daughters. In that case it was said, as the result of the authorities, " that legacies payable at a future time, certain to arrive, and not subject to a condition precedent, are vested. . . . On the other hand, legacies only payable on an event which may never happen, and hence subject to a condition precedent, are contingent." 63 Wis. 566. See *Pennsylvania Co.'s Appeal, Allen's Estates,* 109 Pa. St. 489.

With these observations in view, can we hold in the case at bar that the *corpus* of the estate, in equity, vested in Annie on the death of her father, with the right of possession, on becoming twenty-one years of age, subject to be divested in case she died before that period without issue? Or must we hold that she took no vested right or interest in the estate whatever, but that the same was vested absolutely and completely in the trustee, who was only to pay and transfer the remainder to her, in the event that she attained the age of twenty-one years? It may be stated as a

general proposition, that in construing wills courts are inclined to favor conditions subsequent rather than conditions precedent, especially when such a construction favors the rightful heir of the testator as against a stranger. Of course, no construction can be indulged which is in conflict with the intention of the testator as expressed in his will. To avoid an obvious absurdity, repugnance, or inconsistency with the declared intentions of the testator as gathered from the whole instrument, however, the ordinary and grammatical sense of the words employed may to that extent be modified, extended, or abridged, but no further. *Abbott v. Middleton*, 7 H. L. Cas. 114; *Thellusson v. Rendlesham*, 7 H. L. Cas. 494; *Scott v. West*, 63 Wis. 551; *Webster v. Morris*, 66 Wis. 394–397. If the testator's intention was that the gift over to the society and Miss Ritchie should only take effect in the event that Annie should die under twenty-one years of age *without issue*, then, manifestly, the estate on Annie's death passed to her little son, George McLeod Leddy.

The case of *Spalding v. Spalding*, Cro. Car. 185, was decided 260 years ago. In that case the testator devised the land in question to his oldest son, John, and the heirs of his body, after the death of the testator's widow, and provided that, if John died during the life of the widow, then his son William should be his heir. John died during the life of the widow, leaving a son, and on the death of the widow William entered and claimed the land. But the true construction was held to be that William could only take in case John died *without issue* during the life of the widow. The case of *Strong v. Cummin*, 2 Burr. 767, was quite similar. In that case the testator devised to his oldest son, "Robert, and his heirs, according to the custom, after his mother's decease;" also to his son John and to his heirs, after his mother's decease; and the will provided that, in case Robert or John died, then the devise was to go over

to William and his heirs. Lord MANSFIELD, C. J., speaking for the court, said: "The testator certainly did not mean estates for lives to his two eldest sons; and, if he did not mean to give them mere estates for their lives, it necessarily follows that he must mean a dying upon some contingency. The only question is, what contingency? For he has not expressed it. He only expresses himself that, in case Robert or John die, then William is to have the lands, and to his heirs. One part of the contingency plainly is *that if they die without issue.* . . . Now, if Robert had died under age, he could not have disposed of his estate; but it must have gone to John, if Robert had left no issue. So, also, if John had died under age his share must have gone to Robert, if John had left no issue. . . . But he could not mean that John's provision should otherwise go over to William. He could never mean it to do so, if John himself left issue or if Robert left issue; for he certainly never intended to provide for the surviving brother, and eave the issue of the deceased one quite unprovided for."

In *Abbott v. Middleton*, 21 Beav. 143, affirmed, 7 H. L. Cas. 81–87, the words, "without leaving children or issue," were thus supplied by construction. To the same effect are the cases of *Liston v. Jenkins*, 2 W. Va. 62, and *Nelson v. Combs*, 18 N. J. Law, 27. In *Phelps v. Bates*, 54 Conn. 11, the testator gave the bulk of his property to his son, then thirteen years of age, with a gift over in case of his death "during his minority, *or* without family or issue;" and it was held, upon a construction of the whole will, that the word "or" should be construed to read "and," and hence that the son's estate became indefeasible on his attaining his majority. To the same effect are *Janney v. Sprigg*, 48 Am. Dec. 557, and numerous cases cited in the note.

It is true that in most, if not all, the cases cited to the point now being considered, the. gift or devise was to the first taker, *and to his heirs or the heirs of his body;* but

under our statutes such words are unnecessary in order to convey or devise an absolute or indefeasible estate in lands, much less in personal estate. The statute expressly provides that, "in conveyances of lands, words of inheritance shall not be necessary to create or convey a fee, and every grant of lands, or any interest therein, shall pass all the estate or interest of the grantor, unless the intent to pass a less estate or interest shall appear by express terms, or be necessarily implied in the terms of such grant." Sec. 2206, R. S. This is, broad enough to cover a devise by will. The statute also provides that " every devise of land in any will shall be construed to convey all the estate of the devisor therein, which he could lawfully devise, unless it shall clearly appear by the will that the devisor intended to convey a less estate." Sec. 2278, R. S. This section has been rightfully held to dispense with the necessity of words of inheritance in a will, in order to convey an absolute title in fee. *Little v. Giles*, 25 Neb. 313.

We fully agree with the statement of Mr. Justice ANDREWS that " it may be safely assumed that, where a will is dictated under the influence of family relations, it would seldom happen that a testator would intentionally cut off the issue of a son or daughter from taking the share of the parent in his estate for the benefit of collateral objects." *Vanderzee v. Slingerland*, 103 N. Y. 54. See, also, *In re Smith* (*Lord · v. Hayward*), L. R. 35 Ch. Div. 558. Our statute has established this rule with certainty. It provides that " when a devise or legacy shall be made to a child or other relation of the testator, and the devisee or legatee shall die before the testator, leaving issue who shall survive the testator, such issue shall take the estate so given by the will in the same manner as the devisee or legatee would have done if he had survived the testator, unless a different disposition shall be made or directed by the will." Sec. 2289, R. S. Under this statute it is very manifest that

had the testator after the making of his will, as he did, continued to live until after the death of Annie, and then died without having revoked the same, the estate would have passed to the little boy, George.

But, independent of that statute, we are clearly of the opinion that the estate descended to him from his mother. In other words, we must hold that, upon the death of the testator, the estate vested in Annie, subject only to the condition subsequent that, if she died under the age of twenty-one years, *without issue*, then the gift over to Miss Ritchie and the society would become effectual, but that, as she left a child who survived her, such child inherited the estate from his mother.

The costs and disbursements of both parties in this court and the circuit court are payable out of the estate. The county court will make such allowance for counsel fees to both parties as in the exercise of a sound discretion may be just.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with direction to reverse the judgment of the county court, and for further proceedings therein in accordance with this opinion.