Smith v. Smith, 116 Wis. 570.

SMITH and others, Respondents, vs. SMITH, imp., Appellant.

*January 15—February 3, 1903.*

Deeds: Presumption as to delivery from having been recorded:
    Wills: Construction: Vested remainder.

1. It appeared from the testimony that a deed, which had been re-
corded, had been executed after the grantor had been sued;
that he had stated that he deeded the land to defeat any judg-
ment that might be recovered; that the grantee paid no con-
sideration for the conveyance, and had no knowledge of its
execution or of the fact that it was placed on record, which
was done by the grantor, until some time thereafter, and there
was evidence tending to show that the deed never was in pos-
session of the grantee. *Held,* that such facts were sufficient to
rebut the *prima facie* presumption of delivery arising from
the recording of the deed.·

2. Testator devised a life estate in all his property to his wife so
long as she remained his widow, and, at her death, directed
that the property be equally divided between four of his chil-
dren. The third clause of the will provided that, if the wife
should marry, the property should be sold, and, after paying
his wife certain bequests, the remainder should be divided
among the same four children. The will also declared that no
other person or persons, except those mentioned, should have
any·share in the property, and that he had previously given to
his other children all he intended them to have. *Held,* that
under sec. 2037, R. S. 1878 (providing that future estates in
land are vested when there is a person in being who would
have an immediate right to the possession of the lands upon
the ceasing of the intermediate or preceding estate; and con-
tingent whilst the person to whom or the event upon which
they are limited to take effect remains uncertain), the inter-
ests of the four children mentioned vested at once on the death
of the testator.

APPEAL from a judgment of the circuit court for Richland
county: GEO. CLEMENTSON, Circuit Judge. *Affirmed.*

This is an action in equity brought by the widow and
minor children of one Anson L. Smith, deceased, to cancel
a certain deed to real estate executed by the said Anson·L.
Smith and the plaintiff *Ora,* his wife, running to one A. M.
Smith, which deed is alleged to have been without considera-

tion, and never to have been delivered. It appeared that the land in question was originally owned by one Matthew R. Smith, who died in the year 1881, leaving, him surviving, a widow, named Catherine, who was his second wife, and four children by said second wife, viz.; Lena Leota, Anson La Rose (husband of plaintiff *Ora*), Alva Matthew (being the same person named in the deed as A. M. Smith), and the appellant, *Chloran D. J. Smith*. He also left a number of children by his previous marriage, whose names are not necessary to be stated. Catherine, his widow, had also been married before her marriage to Matthew, and had several children by such marriage. Matthew R. Smith left a will, which was duly probated, the provisions of which, so far as material in this case, are as follows:

"(2) I will and bequeath to my wife, Catherine Smith, all my property, personal, real estate, mortgages, bonds, notes, and all moneys over and above my debts, for her to use to the best of her knowledge and ability for herself and the four children left in her care as long as she lives, if she remains my widow, and at the time of her death to be equally divided between these four children, Lena Leota Smith, Anson La Rose Smith, Matthew Alva Clark Smith, *Chloran Delvan J. Smith*. (3) But if my wife, Catherine Smith, marries again, then the property above described shall be sold. Out of this I will give her five hundred dollars in cash, notes, or bonds, according to her wish. I will her the choice of the cows, or the value of one, and all her beds and bedding. I also will that the remaining value of the property shall be paid in four payments; Lena Leota Smith to receive her payment first, which shall constitute one-fourth of the remaining property; Anson La Rose Smith to receive the second payment; Matthew Alva Clark Smith to receive the third payment; *Chloran Delvan J. Smith,* the fourth and last payment. . . . (6) I also will that there are not any person or persons besides those before mentioned to have any share or portion of the said property. To all of my other children I have before this given all of my property that I intend for them to have.

"M. R. SMITH.   [Seal.]"

It further appears that Lena L. died intestate and unmarried in the year 1893. Anson L. died intestate August 3, 1896, leaving the plaintiff *Ora*, his widow, and the remaining plaintiffs, his children and only heirs at law. Alva Matthew died· intestate and unmarried August 3, 1897; thus leaving the appellant, *Chloran*, the only survivor of the four children. It also appears that Catherine, the widow, died September 4, 1899. On the 5th of March, 1896, the deed in question was duly executed, witnessed, and acknowledged by Anson L. and *Ora Smith*. It purported to convey to A. M. Smith the undivided one-third of the land in question, subject to the homestead and dower interest of Catherine, and it recites a consideration of $2,600. It was duly recorded upon the day of its execution. All of the foregoing facts are undisputed, and are found by the court to be true; the only fact in serious dispute being the question whether the deed was ever delivered. Upon this question *Ora* testified that the deed was made at a bank in Richland Center, in this state, at about nine o'clock in the morning on the day of its date; that A. M. Smith was not present at the time of the execution, and that no money was paid by any one at that time; that her husband, Anson, then took it, and after about half an hour brought it home to her; and that she has had it ever since; and that she knew that A. M. Smith was not in town that morning. One Pease testified that he was present when the deed was made, and that no one was there except Anson and his wife, and that no money was paid. There was some additional testimony by various witnesses of declarations made by A. M. Smith after the execution of the deed and after Anson's death, to the effect that he knew nothing about the making of the deed, and that it did not cost him anything; that he never saw it, and did not think it had left *Ora's* hands; that he claimed nothing by it, and calculated to let Anson's children have the same as the rest of "us;" that it was Anson's fault, and he never saw the deed, nor had any-

thing to do with it. On the part of the defendant one witness testified to conversations with Anson in which Anson said that he had sold or deeded the land to Alva to defeat any judgment which might be rendered against him in a lawsuit then pending. Another witness testified that A. M. Smith was in Richland Center on the day the deed was executed, and that A. M. afterwards told him that he had bought the place. Another testified that Alva said he had the deed of Anson's share in the estate. The court found that the deed was never, in fact, delivered, and that no consideration was paid therefor, and that Anson owned the undivided fourth of said land at the time of his death, and that the deed in question should be canceled. There were a number of defendants, including the children of Catherine by her first marriage, when the action was originally brought; but prior to the trial all the defendants save the defendant *Chloran* withdrew their answers, and the action was discontinued as to them. Judgment was rendered for the plaintiffs, establishing their title to one-fourth of the land in question, and canceling said deed, from which judgment the defendant *Chloran* appeals.

For the appellant there was a brief by *L. H. Bancroft* and *H. W. Chynoweth,* and oral argument by *Vroman Mason.*

For the respondents there was a brief by *W. S. McCorkle,* attorney, and *R. M. Bashford,* of counsel, and oral argument by *Mr. McCorkle.*

WINSLOW, J. The appellant makes two contentions: (1) That the finding that the deed was never delivered is not supported by the evidence; and (2) that the court erred in finding that Anson La Rose Smith had any title to or interest in the land when the deed was made.

1. The defendant is doubtless right in his claim that the fact that a deed is duly recorded is *prima facie* evidence of its due delivery. 1 Devl. Deeds (2d ed.) §.292. But this is

a presumption of fact, merely, which may be rebutted by other evidence showing, as matter of fact, that there was no delivery. Id. The evidence in the present case, which tended strongly to show that no consideration was paid, that Anson placed it on record himself, and that Alva had no knowledge of its execution or recording at the time, and never had possession of it, was deemed sufficient by the trial judge to overcome the presumption of delivery resulting from the recording, and we entirely agree with the conclusion so reached.

2. The proposition that Anson had no title is based upon the claim that under the will of Matthew no vested interest passed to the children during the lifetime of the mother, or that, if a vested interest did pass, it was subject to be devested by death prior to the death of the mother. This question is simply a question of intent, to be gathered from the language of the whole will. The argument for the appellant is that, because no division is to be made until the death or remarriage of the life tenant, no estate in remainder can be held to vest absolutely until the happening of one of those events. It is also said that the sixth clause indicates that there was no intention to vest an estate in any of the children prior to the mother's death, because, if the estate was vested then, upon death of any of the remaindermen intestate his share would go back to the mother, and upon her death intestate would be shared by her children by the former marriage, in violation of the wish of the testator, expressed in the sixth paragraph, that no other person should have any share of the property. Much if not all of the significance to be attached to the sixth paragraph, as bearing on this question, is removed, however, by the last clause thereof, by which it appears that the idea of the testator in adding this clause was to make sure that his children by his previous marriage should in no event share in his property, and to explain the reason of this disposition. This scheme would be in no way defeated or affected by the vesting of the estate in the remaindermen during the life of

Catherine. Our statute (sec. 2037, R. S. 1878) provides that future estates in land "are vested when there is a person in being who would have an immediate right to the possession of the lands upon the ceasing of the intermediate or preceding estate. They are contingent whilst the person to whom or the event upon which they are limited to take effect remains uncertain." The primary canon in the construction of wills is that the intent is to be gathered from the whole will, rather than from the phraseology of any particular isolated clause. It is also well established that in doubtful cases the law leans in favor of an absolute, rather than a defeasible, estate, and of a vested, rather than a contingent, interest, and that, while the general rule is that a gift will be deemed contingent when it is found only in a direction to divide at a future time, this is subordinate to the primary rule that the intent, to be collected from the whole will, must prevail.

Viewing the provisions of the will before us, we are quite well convinced that the testator intended that the interests of the four children should vest at once upon his death. These children are made the sole objects of his bounty, subject to the mother's interest. The anxiety of the testator to give them each a beneficial interest, and to exclude others, is manifest. There is no provision for survivorship in the case of the death of one or more without issue, nor any provision for the disposition of the share of such a child, nor any provision cutting off the issue of a child dying before the termination of the mother's estate.

The will, in its essentials, is quite similar to the will involved in *Patton v. Ludington,* 103 Wis. 629, 79 N. W. 1073, where a similar result was reached, and where the whole subject of the vesting of remainders is so fully discussed, with references to the authorities, that it seems unnecessary to go over the ground again.

*By the Court.*—Judgment affirmed.