In re Albiston's Estate, 117 Wis. 272.

## In re Albiston's Estate.

*February 25—March 21, 1903.*

*Wills: Construction: Equitable conversion: Vested estates.*

A will gave all the testator's property to his wife for life and directed that after her.death all the property be divided into two equal parts, one part to go to the brothers and sisters of the wife, share and share alike. "If any of her said brothers or sisters have died or shall die before my said wife, the share which *would have gone* to him or her shall be equally divided between his or her children." A brother of the wife survived the testator, but died testate before the wife, leaving no descendants. *Held:*

(1) It being impossible to carry out the directions of the will except upon the basis of a conversion of the entire estate into money or its ·equivalent after the death of the wife, the will must be treated as bequeathing persoñal property, and sec. 2037, Stats. 1898, relating to future estates in land, has no application.

(2) No estate vested absolutely in the beneficiaries other than the wife until the close of her life estate, and hence the share that would have gone to her brother had he survived her did not pass by his will. *Smith v. Smith*, 116 Wis. 570, criticised and distinguished.

CASSODAY, C. J., dissents.

APPEAL from a judgment of the circuit court for Columbia county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

This is an appeal from a judgment construing a will. Thomas Albiston, a resident of Columbia county, Wisconsin, died in August, 1890, possessed of considerable real and personal property of various descriptions, and leaving a will, which was afterwards duly probated, the material parts of which are as follows:

"*First.* After payment of my just debts, if any, and funeral expenses, I give, devise and bequeath to my beloved wife, Matilda Albiston, all my property and estate of every kind and description for and during the term of her natural life, and I direct that as to my house, household furniture

and such other things as can reasonably be used by her in the condition in which I have them, that they be kept and used by her in that condition as near as may be.

"*Second.* After the death of my said wife Matilda, I will and direct that all my property and estate of every kind be divided into two equal parts; one part or one half of my said estate I give, devise and bequeath to the brothers and sisters of my said wife Matilda Albiston, share and share alike; if any of her said brothers or sisters have died or shall die before my said wife, the share which would have gone to him or her shall be equally divided between his or her children, share and share alike. The other one-half of my said estate I give, devise and bequeath to my half brother Noah Albiston of England and my half sister Alice Kind of England, share and share alike, and if either of them die before my said wife, leaving no lawful issue, the survivor of them shall take the share which the other if living would have taken, and the child or children of either of them shall take the share the parent would have taken if living."

It appeared that the testator was about seventy years of age at the time of his death, and that his wife, Matilda, survived him, they never having had any children; that his brother and sister named in the will, Noah Albiston and Alice Kind, survived him, both having children and grandchildren at the time of the testator's death; that the widow, Matilda, at the same time had four sisters and one brother living, all of them having children except the brother Alfred; that Matilda lived until November, 1901, and that her sisters and brother Alfred all died before her, and all left children except Alfred, who left no descendants, but died testate, leaving a widow; that Noah Albiston died in 1891, leaving descendants living; and that Alice Kind is still living. Upon these facts the circuit court held that Alfred Stephenson, the brother of Matilda, and his sisters, took vested estates at the death of the testator, and hence that Alfred's share passed under his will. From this holding the executors of Thomas Albiston's will appeal.

For the appellants there was a brief by *Andrews & Palmer,* attorneys, and *Burr W. Jones,* of counsel, and oral argument by *H. E. Andrews* and *Mr. Jones.*

For the respondents there was a brief by *J. H. Rogers,* attorney for estate of Alfred Stephenson; a brief by *S. H. Watson* and *H. W. Chynoweth,* attorneys for respondents *Job* and *Melvin Padley* and the widow of Alfred Stephenson; and oral argument by *Mr. Rogers* and *Mr. Chynoweth.*

The following opinion was filed March 21, 1903:

Winslow, J. The question presented is simply one of construction of a will. While adjudicated cases are sometimes helpful upon such a question, still the guiding principle must always be to ascertain and enforce the intent of the testator as gathered from the particular will to be construed. It is plain from the terms of the will before us that it must be treated as bequeathing personal property. While there are no words directly authorizing the executors to sell real estate, the directions of the will cannot be carried out except upon the basis of the conversion of the entire estate into money or its equivalent after the death of his wife. In no other way would it be feasible or possible to divide the estate into "two equal parts," and give one part to one set of beneficiaries and. the other to another set. *Becker v. Chester,* 115 Wis. 90, 91 N. W. 87. It results from this that sec. 2037, Stats. 1898, concerning future estates in land, cannot be considered as having any bearing upon the construction.

It is first to be noted concerning the present will that there are no words which can be construed as words of present devise or bequest except the words relating to the life estate of the wife. As to all other beneficiaries the words are "After the death of my said wife Matilda I will and direct that all my property and estate of every kind be divided into two equal parts; one part or one half of my estate I give," etc. While this consideration, standing alone, is by no means con-

trolling, especially if inconsistent with other clauses in the will, it is certainly significant, and tends to justify the conclusion that no estate was to vest absolutely in the beneficiaries until the close of the life estate.

Passing on, however, we find words still more significant. After providing for the gift of one of the parts to the brothers and sisters of his wife, he says, "If any of her said brothers or sisters have died or shall die before my said wife, *the share which would have gone* to him or her shall be equally divided between his or her children, share and share alike." The will was evidently drawn with care, and advisedly; its phrases are lawyer-like, and exclude the assumption that any words were used without due consideration of their meaning. The phrase, *"the share which would have gone to him or her,"* can hardly be misunderstood. It clearly means "would have gone at the death of the wife." If such be its meaning, it clearly indicates that the testator's idea was that the time when the bequest was to "go" or become effective was at the death of his wife, and not before. If such be its meaning, then it is clear that the testator intended that the beneficiaries are to be determined not at the time of his death, but at the time of the death of the life tenant. It was perfectly competent for the testator to make such a provision. If he had said that after the death of his wife one half of the estate was to be divided among the brothers and sisters of his wife *then living,* there would be no doubt of the validity of the direction, nor any question of its effect. 2 Underhill, Wills, § 865. The words actually used by the testator seem to us to point practically with equal certainty to the conclusion that the bequests were not expected to absolutely vest in the beneficiaries until the close of the life estate, as the words above suggested. We can but regard them as controlling.

The principle that in doubtful cases the law leans in favor of an absolute, rather than a defeasible, estate, and of a vested, rather than a contingent, interest, is well understood and fre-

quently applied; but it does not apply when the language of the will clearly shows a different purpose by the testator and that purpose be capable of legal fulfilment. The principle above referred to was applied in the case of *Smith v. Smith,* 116 Wis. 570, 93 N. W. 452, and this case is relied upon to some extent by the respondents. Examination of the will in that case, however, shows that there were no words there of similar import to the words which we consider controlling in the present case. It ought to be said that it seems clear that there was an error in that case in referring to sec. 2037, Stats. 1898, as in any way having a bearing thereon. That case, like the present, was clearly a case of equitable conversion, and hence the bequests were bequests of personalty. However, the decision was based principally upon the language and apparent intent of the will, and it seems fully supported without any reference to the statute.

The cases of *Scott v. West,* 63 Wis. 529, 24 N. W. 161, 25 N. W. 18, and *Patton v. Ludington,* 103 Wis. 629, 79 N. W. 1073, were much relied upon by the respondents as sustaining the judgment in this case. Upon the view we have taken of the meaning of the phrase "share which would have gone" in the will before us, it does not seem necessary to discuss the cases referred to. It does not appear that the principles decided in those cases are in any respect at variance with the decision here.

*By the Court.*—That part of the judgment appealed from is reversed, and the action is remanded with directions to modify the judgment in accordance with this opinion.

The following opinion was filed April 7, 1903:

CASSODAY, C. J. I am compelled to dissent in this case. In my judgment, the clause of the will in question, immediately upon the testator's death, vested the undivided one-half of the testator's estate in the brothers and sisters of his widow,

share and share alike, subject only to the payment of debts and expenses and the life estate of the widow, and subject to the contingency that, in case any of them died before the widow, leaving issue, his or her share should go to such issue. In my opinion, such a construction is required by the repeated adjudications of this court, as well as the great weight of authority in this country and England. *Scott v. West,* 63 Wis. 533, 563–573, 593–595, 24 N. W. 161, 25 N. W. 18; *Baker v. Estate of McLeod,* 79 Wis. 534, 541–545, 48 N. W. 657; *Burnham v. Burnham,* 79 Wis. 557, 566, 567, 48 N. W. 661; *Patton v. Ludington,* 103 Wis. 629, 646–650, 79 N. W. 1073; *Smith v. Smith,* 116 Wis. 570, 93 N. W. 452. In the first of the cases here cited the important clause of the will construed read as follows:

"*Fourth.* After the death of my said daughters, Mary and Kate, I give, devise and bequeath all the residue and remainder of my property, real *and personal,* to my surviving grandchildren, and to the legal issue of any deceased grandchild or grandchildren, by way of representation of such deceased grandchild or grandchildren, and to their heirs and assigns, forever, in equal parts." 63 Wis. 533.

And the court held that:

"(7) The words 'after the death of my daughters,' in said fourth clause, refer to the time when the survivors designated will come into complete enjoyment and possession of the residue of the estate, and not to the time when the gift takes effect in point of right.

"(8) By that clause, therefore, each grandchild living at the death of the testator took at once, and each after-born grandchild takes at its birth, a vested remainder in a fractional share of the realty, and a corresponding vested interest in the *personal property,*—such remainder opening to let in after-born grandchildren and the issue of deceased grandchildren by way of representation, and being liable to be divested as to any grandchild dying without issue; and such interest in the personalty being liable to be divested in like manner and to be diminished by future births." 63 Wis. 531, 24 N. W. 161, 25 N. W. 18.

Among the numerous cases, English and American, cited in support of such construction, is *McArthur v. Scott*, 113 U. S. 340, 378, 5 Sup. Ct. 652, 660, where Mr. Justice GRAY, speaking for the court, said:

"For many reasons, not the least of which are that testators usually have in mind the actual enjoyment, rather than the technical ownership, of their property, and that sound policy as well as practical convenience requires that titles should be vested at the earliest period, it has long been a settled rule of construction in the courts of England and America that estates, legal or equitable, given by will, should always be regarded as vesting immediately, unless the testator has by very clear words manifested an intention that they should be contingent upon a future event."

But it is unnecessary to repeat what has been so often stated in the cases cited. The language of the will in the recent case of *Becker v. Chester*, 115 Wis. 90, 91 N. W. 87, is so different from the will in the case at bar as to be, in my opinion, clearly distinguishable.