## In re Cowley's Will.

*December 15, 1903—January 12, 1904.*

*Wills: Construction: "My lawful heirs": Appeal and error.*

1. A testator gave his estate to his wife for life, and on her death to his eldest daughter for life, and provided that after her death "such portion of my said estate as may remain shall be equally divided between my lawful heirs." *Held,* that the testator meant by the term "my lawful heirs" those persons who at his death would by law have been entitled to inherit his intestate estate.

2. An appellant is not prejudiced by a judgment which on the theory of the law advanced by him would result in his taking nothing.

Appeal from a judgment of the circuit court for Columbia county: R. G. Siebecker, Circuit Judge. *Affirmed.*

The testator, Thomas Cowley, at the date of making the will in question, to wit: June 15, 1868, was a farmer owning and living upon a farm of 120 acres of land, with little personal property. He then had a wife and eight adult children, most, if not all, of whom were married and not resident with the parents, except the eldest daughter, Maria Jobbins, a widow with children, who did reside with and care for them. The will was made in anticipation of his then imminent death, which occurred July 8, 1868. The real estate which

is now the subject of claim by the respective parties to this action constituted nearly all of the estate left by him. The disposing part of the will was as follows:

"After payment of my debts and funeral expenses, I give, devise, and bequeath to wife, Rebecca, all of my lawful estate, both real and personal, and after the death of my wife, Rebecca, the said estate to revert to my eldest daughter, Maria Jobbins, which I bequeath as her home in consideration of her care of her father and mother while they live, and after the death of my wife, Rebecca, I still bequeath the said estate to my said eldest daughter, Maria, her natural life, and after the said Maria's death, my eldest daughter, the such portion of my said estate as may remain, shall be equally divided between my lawful heirs."

An administrator with the will annexed was appointed, and formally discharged. The farm in question has been occupied, first, by the widow and Maria together until the widow's death, and thenceforward by the daughter, Maria, who died August 17, 1900, leaving four living children, and issue of two of her children who had predeceased her after the death of the testator. Another child of the testator, Alfred Cowley, also died after his father and before his sister, leaving him now surviving six children and the issue of a deceased child, who died after the testator and before Maria. The other six children of testator are still living; some, if not all, of them having families of children. After the death of Maria, and about August, 1901, one of the children of testator (*Ellen Hallock*) made petition to the county court for construction of the will, and adjudication of the interests of the parties therein. The county court adjudged that all of the children, grandchildren, and great-grandchildren of the testator living at the death of Maria constituted the reversionary class, to each of whom was awarded an equal share, to wit, one twenty-third. Upon appeal the circuit court found substantially the foregoing facts, and, as a specific fact, that the testator intended to devise the remainder to his children,

and adjudged one eighth of the estate to each of the surviving children, and to the surviving issue of each of the deceased children an eighth part, divided according to the rights of representation. From that judgment certain of the grand-children and great-grandchildren, whose parents predeceased Maria Jobbins, appeal. No bill of exceptions was settled.

For the appellants there was a brief by *J. H. Rogers,* guardian *ad litem,* and *H. E. Andrews,* attorney, and oral argument by *Mr. Andrews.*

For the respondents there was a brief by *Fowler & Mc-Namara,* and oral argument by *C. A. Fowler.*

DODGE, J. The point of contention in this case is the meaning of "my lawful heirs." The respondents contend, and the trial court found, that the testator meant those persons who at his death were by law entitled to inherit his intestate real estate, to wit, his eight children. The appellants insist that he meant those persons who would by law have been entitled to inherit said realty, had testator died at the time of the termination of the two life estates, or on August 17, 1900, the day of the death of Maria Jobbins. The words themselves are not ambiguous, but have a well-ascertained and definite meaning, entirely in accord with that ascribed to them by the trial court, supported by such dictionaries as Webster's, the Century, and the Standard; also by 1 Bouvier, Law Dic. 941, 942; Anderson's Dic. 508; 2 Blackstone, Com. 201; *Holloway v. Holloway,* 5 Ves. Jr. 399; *Rand v. Butler,* 48 Conn. 293; *McDaniel v. Allen,* 64 Miss. 417, 1 South. 356; *In re Tucker's Will,* 63 Vt. 104, 21 Atl. 272; *Buzby's Appeal,* 61 Pa. St. 111, 114; *Brown v. Lawrence,* 3 Cush. 390, 396; *Childs v. Russell,* 11 Metc. 16; *Abbott v. Bradstreet,* 3 Allen, 587; *Lavery v. Egan,* 143 Mass. 389, 9 N. E. 747. The list of authorities might be extended much further, but it is unnecessary, for they are without substantial conflict, not only as to the primary meaning of the words,

but also as to the meaning they must have in context and under circumstances like the present. They support over-whelmingly the rule that reference in a will to heirs or legal heirs of the testator means the persons who at his death are by law entitled to inherit his realty; that such significance can be overcome only by clear and conclusive evidence of a different intent or meaning; that the enjoyment, or even the vesting, of the devised property is postponed to some future time, or dependent on contingency, is not sufficient; nor the fact that an intermediate life estate is given to one of such heirs, so that his death must precede the falling in of the devised property; nor the fact that the provision of the will is merely to distribute or divide the property at some future time, with no words of gift or grant otherwise. The foregoing grounds for holding that the testator did not intend the words "my legal heirs" to have their accurate and legal meaning, which are substantially all that are insisted upon by the appellants here, have all been so fully met and overruled in the foregoing cases that we hardly feel justified in more than the citation. Perhaps the most strenuous of appellants' contentions is that because the will contains no words of present gift, but merely a direction to divide the property after the death of the life tenant, therefore the actual recipients of shares of the property could not be known till that time; hence, as a result, the testator must have intended the gift in remainder to a class to be then ascertained. If we concede such force as is claimed for the mere direction to divide— a proposition which we need not decide—the conclusion does not necessarily result. In the recent cases of *In re Albiston's Est.* 117 Wis. 272, 94 N. W. 169, and *In re Moran's Will,* 118 Wis. 177, 96 N. W. 367, such a provision, supplemented by other clear evidence of intent, was held to show a purpose that only persons in being at the expiration of the intermediate estate should in fact receive anything; but, especially in the latter case, this was held not inconsistent with the

designation of a class as of the testator's death, from which must come the actual recipients, nor inconsistent with such a vesting of title in the class existing at the time of testator's death and at every moment thereafter as would satisfy the requirements of our statutes against perpetuities. So, here, if the will were construed a grant only to such of testator's heirs as might be alive at the death of Maria Jobbins, that would in no wise militate against the conclusion that his heirs must be those who were such at his death; that a class then designated became vested with the title in remainder, although the right of any individual member of that class might be contingent, in the sense of being liable to be devested by his death before Maria. The surrounding circumstances, we think, tend to confirm the inference of testator's purpose resulting from the accurate meaning of the words used. The will was made when testator believed his death imminent, so that the descendants who would survive him would be the eight children then living. No reason is disclosed why he should favor one child rather than another, except as to Maria, to whom he provided a home on the farm during her life. The several children themselves had families of children, differing in number. It is extremely improbable that the testator contemplated that the equal share naturally attributable to each child should be subject to diminution by the death of any other of his children, leaving numerous issue. Equality between those whom the testator then knew to be his legal heirs is so natural a motive, under the circumstances, that strong evidence would be necessary to preclude inference of existence. We therefore reach agreement with the conclusion of the trial court as to the meaning of "my legal heirs" as an original proposition, without resting upon conclusiveness of the finding to that effect which would result from absence of any bill of exceptions presenting all the evidence, if, as apparently the case, that finding rested on extrinsic evidence supporting the inference drawn. *Ganson*

*v. Madigan,* 15 Wis. 144; *Vilas v. Bundy,* 106 Wis. 168, 176, 81 N. W. 812; *Chicago, St. P., M. & O. R. Co. v. C., M. & St. P. R. Co.* 113 Wis 161, 170, 87 N. W. 1085, 89 N. W. 180; *Merrill v. Best,* 116 Wis. 121, 92 N. W. 555.

Another question, suggested probably by the *Moran Case,* has been mentioned, though hardly discussed, upon the argument in this court. It does not appear to have been raised at all in the circuit court. That question is, conceding the expression "legal heirs" to include only those living at testator's death; namely, his eight children, whether the intention was to give to them absolutely and as individuals, so that the interest of each became vested, in the common-law sense, or only to such members of that class as survived the period fixed for distribution and enjoyment. In the first view of testator's intention, the issue of any deceased child would take as heirs of that child by representation. *Scott v. West,* 63 Wis. 529, 569, 24 N. W. 161, 25 N. W. 18; *Patton v. Ludington,* 103 Wis. 629, 647, 79 N. W. 1073; *Smith v. Smith,* 116 Wis. 570, 93 N. W. 452. In the latter they would not take at all. *In re Albiston's Est.* 117 Wis. 272, 94 N. W. 169; *In re Moran's Will,* 118 Wis. 177, 96 N. W. 367. The judgment appealed from proceeds upon the former view. Under it, each of the appellants takes something, while, if the latter view of testator's purpose were adopted, they would none of them take anything. Therefore, if the judgment were held erroneous in this respect, it could in no wise prejudice or injure these appellants, but would merely unduly favor them. Since those prejudicially affected rest content, and do not appeal, we could not reverse the judgment for such an error. Sec. 2829, Stats. 1898; *Decker v. Trilling,* 24 Wis. 610, 615; *Ackley v. Vilas,* 79 Wis. 157, 48 N. W. 257; *Keystone L. Co. v. Kolman,* 103 Wis. 300, 203, 79 N. W. 224.

*By the Court.*—Judgment affirmed.

SIEBECKER, J., took no part..

CASSODAY, C. J. I concur in affirming the judgment of the trial court in this case, but not in all that is said in the opinion of my Brother DODGE. The language of the will is very plain and simple. Upon the death of the testator, and by the express terms of the will and the well-established rules of construction, as I read the authorities, the estate became vested in the testator's "lawful heirs"—being his eight children who then survived him—subject only to the two intervening life estates therein mentioned. This being so, on the death of any one of such children his share of such estate necessarily descended to his heirs at law. Secs. 2270, 2289, Stats. 1898. That such is the well-recognized rule of law, I refer to the following as a few of the many cases that might be cited: *Moore v. Lyons,* 25 Wend. 119; *Livingston v. Greene,* 52 N. Y. 118, 123; *Kelly v. Kelly,* 61 N. Y. 47; *Van Axte v. Fisher,* 117 N. Y. 401, 22 N. E. 943; *Nelson v. Russell,* 135 N. Y. 137, 140, 31 N. E. 1008; *Stokes v. Weston,* 142 N. Y. 433, 37 N. E. 515; *Hersee v. Simpson,* 154 N. Y. 496, 48 N. E. 890; *Baker v. McLeod's Estate,* 79 Wis. 534, 541–545, 48 N. W. 657; *Burnham v. Burnham,* 79 Wis. 557, 566, 567, 48 N. W. 661. These cases and many others are cited and sufficiently commented upon in my opinion in the *Moran Will Case,* 118 Wis. 177, 96 N. W. 375–377.

On February 23, 1904, the mandate of the court was amended to the extent of allowing the taxable costs of both parties to be paid out of the estate.