FLINT and others, Respondents, vs. WISCONSIN TRUST COMPANY and others, Appellants.

*November 1—November 19, 1912.*

*Wills: Construction: Intent: "Heirs:" Accurate use of word presumed: Vested and contingent estates.*

1. Unless a contrary intention appears by clear and conclusive evidence, the word "heirs" in a will will be given its technical and correct meaning, as referring to those persons who, at the death of the ancestor named, would be entitled to inherit his real estate under the laws of descent.
2. Thus, in a devise of land to the testator's sister "for life, remainder to her heirs in fee," the word "heirs" is *held* not to have been used to denote "children" or "heirs apparent."

3. It is not accurate to speak of a designated person as the heir of another person who is living; but it is accurate to speak of the heirs of a living person when reference is intended to be made to those unknown persons entitled to inherit his real property at his death under the laws of descent.

4. The rule of law which favors vested estates rather than contingent ones is practically a rule of construction which may have controlling weight in a close or doubtful case, but cannot be invoked to defeat the intent of the testator where that intent is reasonably clear.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Affirmed.*

This is an action of ejectment. Plaintiffs and defendants claim title from a common source, to wit, the will of M. B. Kneeland, who died July 1, 1875, seised in fee simple of the premises involved in this suit. The will, omitting purely formal parts, is as follows:

"First. I direct that as soon as is convenient after my decease all my just debts be paid.

"Second. I will and direct that as soon as it can be conveniently done after my decease, my executor erect upon the lots in Forest Home Cemetery, of which my father died seized, a family monument and that he otherwise improve said lots to and at a cost not less than two thousand dollars nor more than three thousand and in such manner as to my said executor consulting with my sisters shall see fit.

"Third. I will and direct that as soon after my decease as my personal estate will reasonably admit my said executor erect upon the west fifty-five feet of Lot No. Twelve in Block No. Fifty-eight in the Fourth Ward of the city of Milwaukee, on the northeast corner of Spring and West Water streets a brick block to be called "Kneeland's Block," covering the whole of my ground there, and to have the name of the block set in front in cut stone, the said block to cost not less than fifteen nor more than twenty thousand dollars. If my personal estate shall not be sufficient thereto at the time my estate shall be settled or ready for settlement; other than touching ( ?) the above direction then I direct that the same be put

at interest until it with the rents of such lot and such sum as my sister, Sarah O. Chandler, shall see fit to add thereto, shall be sufficient to erect such block.

"Fourth. I give and bequeath the said west fifty-five feet of said Lot No. Twelve in Block No. Fifty-eight, in the said Fourth Ward, corner of Spring and West Water streets, subject to the accumulation of rents aforesaid, to my sister Sarah O. Chandler, for life, remainder to her heirs in fee.

"Fifth. I give and bequeath to my sister Ellen C. Sexton all my interest in and to Lots Nos. Five and Six, in Block No. Twenty-two (22) in the Seventh Ward of the city of Milwaukee, to have and to hold to herself, her heirs and assigns forever.

"Sixth. I give and bequeath to my sister Frances Flint all my interest in Section Sixteen in Township No. Seven, north of Range Twenty-two (22) East, to have and to hold to herself, her heirs and assigns forever.

"Seventh. I will and direct that my executor convert all the rest and residue of my real estate of which I shall die seized into money, selling the same at such time and in such manner as to him shall seem fit and proper, and upon such terms of sale as to him shall seem fit and if he sell upon credit then such credits to be divided as hereinafter provided. After my said executor shall have converted all my real estate into money, paid my debts and constructed and erected such monument, then I will and direct that he divide the proceeds thereof equally between my said sisters, their heirs and legal representatives, share and share alike.

"Eighth. I will and direct that all the rest and residue of my personal estate to which resort is first to be had to erect said monument and which shall remain after the erection of said block shall be divided equally among my sisters aforesaid and their legal representatives, the heirs and representatives taking the share which would have gone to their ancestor.

"Ninth. I appoint my brother-in-law, Walter S. Chandler, executor of this my last will and testament."

This will was executed on July 23, 1874, and Kneeland died July 1, 1875, childless. At the time the will was executed one of the sisters of the testator was the wife of Walter S. Chandler of Waukesha and also the mother of two children,

Ralph Chandler, born July 16, 1861, and B. K. Chandler, born October 22, 1872. Both of these children were living when the will was made and when the testator died. Walter S. Chandler, the husband of Sarah, died on December 27, 1896; Ralph Chandler died August 12, 1904, leaving no issue, but leaving a widow surviving him, as well as his mother and one brother, B. K. Chandler. B. K. Chandler died June 17, 1907, unmarried and childless, leaving his mother surviving him. The mother, Sarah O. Chandler, died August 4, 1911. In 1891 Sarah O. Chandler, Ralph Chandler, and B. K. Chandler, an infant, by W. S. Chandler, his special guardian, contracted to sell the property in question here to Fred Pabst for the sum of $150,000, $50,000 of which amount was to be paid in cash and the balance of said sum in deferred payments.

The plaintiffs in the present suit are the nephews and nieces of Sarah O. Chandler, deceased, and the controversy arises over the fourth paragraph of the will, the plaintiffs claiming that Sarah O. Chandler took a life estate only in the property and that the remainder over descends to them as her heirs at law. The defendants, on the contrary, assert that it was the intention of the testator to give a life estate in the property to Sarah O. Chandler, with the remainder to her then living children, and that the word "heirs" as used in said paragraph 4 means "heirs apparent" or children. The trial court awarded judgment in favor of the plaintiffs, and from such judgment the defendants appeal.

*Geo. D. Van Dyke,* of counsel, for the appellants.

For the respondents there was a brief by *Miller, Mack & Fairchild* and *Woodward & Lees,* and oral argument by *Geo. P. Miller* and *G. M. Woodward.*

BARNES, J.    In construing a will the vital thing is to ascertain what the testator meant, and his intention must be gathered from the instrument as a whole, read in the light of the circumstances which surrounded him when it was made.

*Allen v. Boomer,* 82 Wis. 364, 52 N. W. 426; *Becker v. Chester,* 115 Wis. 90, 91 N. W. 87, 650; *In re Donges's Estate,* 103 Wis. 497, 79 N. W. 786; *Davies v. Davies,* 109 Wis. 129, 85 N. W. 201; *Kavanaugh v. Watt,* 143 Wis. 90, 126 N. W. 672; *Ohse v. Miller,* 137 Wis. 474, 119 N. W. 93. But construction of a will does not begin "until uncertainty of sense is pretty clearly apparent." *Holmes v. Walter,* 118 Wis. 409, 413, 95 N. W. 380. "We must have ambiguity before we can enter upon the field of interpretation or construction." *In re Moran's Will,* 118 Wis. 177, 196, 96 N. W. 367.

While adjudicated cases may be and sometimes are helpful in aiding in the construction to be placed on wills, it is seldom that the language used and the surrounding circumstances are so much alike in the case of two wills that the decision in reference to one establishes a precedent which controls the decision as to the other. *In re Albiston's Estate,* 117 Wis. 272, 94 N. W. 169; *Becker v. Chester,* 115 Wis. 90, 118, 91 N. W. 87, 650; *Otjen v. Frohbach,* 148 Wis. 301, 309, 134 N. W. 832.

If the word "heirs" used in the fourth paragraph of the will is to be given its technical and correct meaning, then it refers to those persons who would be entitled to inherit Mrs. Chandler's real estate upon her death under the law of descent. This is conceded. In the case of *In re Cowley's Will,* 120 Wis. 263, 266, 97 N. W. 930, 98 N. W. 28, it is said that the words "my lawful heirs" are not ambiguous and that the authorities overwhelmingly "support the rule that reference in a will to *heirs* or *legal heirs* of the testator means the persons who at his death are by law entitled to inherit the realty; that such significance can be overcome only by clear and conclusive evidence of a different intent or meaning."

"The word 'heirs' in a will primarily is used in its legal or technical sense, and, unless the context shows a contrary intention, must be construed as meaning all those who, in case of intestacy, would be entitled by law to inherit on the death of the testator or ancestor named." 40 Cyc. 1459.

The following authorities are to the same effect: 2 Under-hill, Wills (1900 ed.) § 607; Page, Wills, § 556; *McLean v. Williams,* 116 Ga. 257, 42 S. E. 485; *Cushman v. Horton,* 59 N. Y. 149; *Hoover v. Smith,* 96 Md. 393, 54 Atl. 102; *Jarboe v. Hey,* 122 Mo. 341, 353, 26 S. W. 968; *Appeal of Dodge,* 106 Pa. St. 216, 220, 51 Am. Rep. 519; *McCarthy v. Marsh,* 5 N. Y. 263, 275; *Phillips v. Carpenter,* 79 Iowa, 600, 44 N. W. 898; *Croom v. Herring,* 11 N. C. 393; *Barclay v. Cameron,* 25 Tex. 232, 242; *Brooks v. Evetts,* 33 Tex. 732, 742; *Lavery v. Egan,* 143 Mass. 389, 9 N. E. 747; *In re Donahue's Estate,* 36 Cal. 329, 332; *Ewing v. Barnes,* 156 Ill. 61, 40 N. E. 325, 327; *Howell v. Gifford,* 64 N. J. Eq. 180, 53 Atl. 1074, 1077; *Dukes v. Faulk,* 37 S. C. 255, 16 S. E. 122, 127; *Gauch v. St. Louis Mut. L. Ins. Co.* 88 Ill. 251, 30 Am. Rep. 554; *Cook v. First Univ. Church,* 23 R. I. 62, 49 Atl. 389, 390; *Nye v. Grand Lodge A. O. U. W.* 9 Ind. App. 131, 36 N. E. 429, 436; *Lincoln v. Perry,* 149 Mass. 368, 21 N. E. 671, 4 L. R. A. 215; *Olney v. Lovering,* 167 Mass. 446, 45 N. E. 766; *Merrill v. Preston,* 135 Mass. 451, 457; *Lawton v. Corlies,* 127 N. Y. 100, 27 N. E. 847, 848; *Proctor v. Clark,* 154 Mass. 45, 27 N. E. 673, 12 L. R. A. 721, 724; *Alexander v. Wallace,* 76 Tenn. (8 Lea) 569, 570; *Kelley v. Vigas,* 112 Ill. 242, 245; *Shaw v. Robinson,* 42 S. C. 342, 20 S. E. 161.

That a case might arise where the word "heirs" would be construed to mean children or heirs apparent may be admitted. But before a court should say that the word should not have its accurate and legal meaning, it should clearly appear that the testator did not use the word advisedly and that he intended to say something different from what he did say.

Appellants' contentions are that the word "heirs" is used in a popular sense to denote "heirs apparent," as well as in a technical sense; that it is not accurate to speak of heirs of a living person if it is the intention to use the word in a technical sense, while it is if the word is used as meaning heirs

apparent or children; that in articles 5 and 6 of the will the testator used the word "heirs" in its technical sense and in articles 7 and 8 he used the word in its popular sense, showing that he used the word in its popular as well as in its technical sense; that the language of the fourth article of the will imports an immediate and absolute gift of the remainder to the heirs of a person recognized in and by the will as then living; that conditions were such when the will was made that the testator evidently intended to make a devise of a life estate to Mrs. Chandler and vest the remainder in her children; and, finally, that the law favors vested rather than contingent remainders, and, where there is reasonable doubt as to which a testator intended to create, the doubt should be resolved in favor of the vested remainder.

None of these reasons, considered singly, is very persuasive, and all of them combined are not very convincing. A large number of cases are cited by appellants wherein the word "heirs," when used in the deed or will under consideration, was held to mean children. In some of those cases the court held that, taking the instrument as a whole and construing it in the light of the circumstances which surrounded the party who made it, it was manifest that the word *heirs* was intended to mean *children.* In many of them such a construction was necessary in order to hold the grant or devise valid. In some of the cases relied on there was perhaps fair room for doubt as to what the intention of the testator or grantor was.

Starting with the propositions established in this court, that the meaning of the word "heirs" when used in a will is not ambiguous, and that the evidence must be clear and conclusive to show that the testator made an inaccurate use of the word, there is little to indicate that the trial court did not correctly construe the fourth article of the will.

The obvious impression which a reading of the will conveys to the mind is that the testator intended that Mrs. Chandler should have a life estate in the property, and that after she

was through with it it should go to those who would inherit any real estate she might own if she died intestate. It is not accurate to speak of a designated person as the heir of another person who is living, although it is customary enough to do so. It is accurate to speak of the heirs of a living person when reference is intended to be made to those unknown persons entitled to inherit his real property at his death under the laws of descent. Neither are we impressed with the contention that the word *heirs* is used in its popular rather than in its technical sense in articles 7 and 8 of the will, or that it purports to make an immediate gift of the remainder. The rule of law which favors vested estates rather than contingent ones at the present time is practically a rule of construction that may have controlling weight in a close or doubtful case, but cannot be invoked to defeat the intent of the testator where that intent is reasonably clear. The fact of the matter is, the will appears to be a pretty plain and easily understood document, about the intent and meaning of which there is not very much doubt. Perhaps able counsel, in view of what has transpired, could use more apt and less ambiguous language than that used, but the draughtsman without the benefit of hindsight managed to draw a document which is far from being cryptic in character.

By giving the word *heirs* its technical legal meaning, we have a will that makes an entirely sane and reasonable disposition of the property. The testator wanted to specially provide for his sister, Mrs. Chandler, probably because her husband was not as well off as were the husbands of his other sisters. He took care of her by giving her a life estate in the property and by providing that a building should be erected thereon from which she should draw the rents. If she left children surviving her, they would of course take the fee; if not, then the estate was to go to Mrs. Chandler's heirs, who, as it turned out, would also be the lawful heirs of the testator had he died without leaving a widow or issue at the time

Mrs. Chandler died. It is true that under the construction which we adopt a contingency might have arisen whereby the property would have gone to Mrs. Chandler's husband, and it may be said that the testator desired to have his property go to his own blood relations. This contingency, however, would be just as likely to happen under the construction contended for by appellants.

Although the case is important, we deem it unnecessary to prolong the discussion. The case involves practically a single question. If the testator used the word *heirs* when he meant *children,* the judgment should be reversed, otherwise it should stand. The plain import of the language used is that the testator did not mean children. If its ordinary and usual sense is given to the language used, the circuit court reached a correct conclusion. To our minds the case is quite barren of circumstances which would logically lead to the conclusion that the testator meant *children* when he used the word *heirs* in the fourth article of his will.

*By the Court.*—Judgment affirmed.