WILL OF ROTH: ROTH, Administratrix, and others, Appellants, vs. KARSTEN and others, Respondents.

*September 16—November 12, 1926.*

*Wills: Intent of testator: How ascertained: Rules of construction: When legacy is vested: Intermediate estates: Postponement of payment of legacy.*

1. In construing a will the intent of the testator governs if that intent is discoverable from an inspection of the will. p. 369.
2. Where the will itself fails to disclose the intention of the testator as to when bequests should vest, the court must invoke settled rules of construction. p. 369.
3. The time of the vesting of a postponed legacy depends on whether the postponement relates merely to the enjoyment of the legacy or is attached to the substance of the gift. Where the postponement is attached to the substance of the gift, the vesting is postponed; but where the postponement relates merely to the enjoyment of the gift, vesting takes place as of the date of the death of the testator. p. 371.
4. Where a future gift is postponed to let in some other interest or for the benefit of the estate, the gift is vested as of the date of the death of the testator, although the enjoyment is postponed. p. 371.
5. Where a will, after specific bequests, gave the residue of testator's estate to a named person in trust to pay the income to testator's widow, and on her death to distribute the trust estate equally among testator's children, the children took a vested interest in the residue, although the enjoyment was postponed. [*Cashman v. Ross,* 155 Wis. 558, in so far as it is *contra,* overruled.] pp. 371–374.

APPEAL from a judgment of the county court of Milwaukee county: M. S. SHERIDAN, Judge. *Reversed.*

This is an appeal from a judgment of the county court of Milwaukee county construing the will of Leo Roth, deceased. The testator made his will May 25, 1912. He died June 8, 1912. His will was admitted to probate in the county court of Milwaukee county August 9, 1912. He left him surviving his widow, Rachel Roth, and four children,

namely, *Bertie Roth Pereles, Mabel Roth* (now *Mabel Roth Karsten*), *Stanley Roth,* and Carnot Roth. He left an estate of $150,000 consisting wholly of personal property. He made specific bequests in his will as follows: to his daughter *Bertie Roth Pereles,* the sum of $10,000; to his daughter *Mabel Roth,* the sum of $10,000; to his sister Rosa Gans, $1,000; to his brother Charles Roth, $1,000; to his sister Hermine Taenzer, the sum of $500. He also made certain charitable bequests. To his son Carnot Roth he bequeathed $5,000 when he shall attain the age of thirty years, and the further sum of $5,000 when he shall attain the age of thirty-five years; "in the event of said Carnot Roth dying prior to the time of his arriving at the age of thirty years, the said bequest shall become null and void and the said money shall revert to and become a part of the residue of my estate; in the event of said Carnot Roth dying between the ages of thirty and thirty-five years, then the said sum of $5,000 that would be payable to him when he would have attained the age of thirty-five years shall revert to and become a part of the residue of my estate." In almost identical language he made a similar bequest of a like amount to his son *Stanley Roth.* To his grandchild *Marion B. Pereles,* daughter of *Bertie R. Pereles* and Max Pereles, he bequeathed the sum of $1,000, to be paid to her when she shall attain the age of twenty-one years, and in the event of her death prior to said time, then and in that event the said bequest to her made shall revert to and become a part of the residue of his estate. The thirteenth provision of the will is as follows:

"All of my estate not specifically given, devised, or bequeathed, I give, devise, and bequeath unto Rachel Roth, Max Pereles, and *Mabel Roth,* and to the survivor of them, in trust, for the following purposes, to wit:

"My said trustees shall pay annually the sum of two

hundred dollars per year to my sister, Anna Neufeld, during the term of her natural life.

"My said trustees shall pay over to my said wife all income of every nature, kind, or description that may arise from any and all sources of my estate, and the same shall be paid to her monthly.

"Upon the death of my wife the said trustees shall distribute the said trust estate equally among my children."

The widow, Rachel Roth, died August 13, 1924. The son Carnot Roth died February 25, 1923, predeceasing the widow, Rachel Roth. Carnot Roth left him surviving his widow, *Sylvia Roth,* and two children, *Marion Beatrice Roth* and *Leo James Roth,* aged five and two years, respectively. In March, 1925, the trustees of the estate of Leo Roth petitioned the county court of Milwaukee county for a construction of the will of Leo Roth. From the judgment construing the will, the *Realty Finance & Securities Company,* a creditor of Carnot Roth, and *Sylvia Roth,* as administratrix of the estate of Carnot Roth, deceased, and as guardian of certain minor children, bring this appeal.

*Nathan Pereles, Jr.,* of Milwaukee, for the appellant *Roth.*

For the appellant *Realty Finance & Securities Company* there was a brief by *Ralph J. Goeb,* attorney, and *William H. Churchill,* of counsel, both of Milwaukee, and oral argument by *Mr. Churchill.*

*George A. Burns* of Milwaukee, guardian *ad litem,* for *Leo James Roth* and *Marion Beatrice Roth.*

For the respondents there was a brief by *Olwell & Brady* of Milwaukee, and oral argument by *L. A. Olwell.*

OWEN, J. The question presented by this appeal is whether the bequest to the children of Leo Roth upon the death of the widow was vested as of the date of the death of the testator or whether vesting was postponed until the death of the widow. The trial court held that such bequest did not vest until the death of the widow.

It is fundamental that the intent of the testator in such respect is to govern if that intent is discoverable from an inspection of the will. We have given the will most careful consideration, and we can discover no provision therein which throws any light upon the testator's intention as to when the residue of his estate should vest in his legatees. Significance is attached to the fact that the specific bequests to his sons were not to take effect until the sons became of a certain age, and that a similar condition is attached to the bequest to the grandchild, while no similar conditions are to be found in the specific bequests to the daughters. We must confess that a consideration of these various provisions is more confusing than illuminating upon the question of his intent with reference to the vesting of the residue of his estate. It would seem that, for some reason satisfactory to himself, he desired to postpone the bequest made to his sons until they shall have arrived at the age of thirty years. No similar condition was attached to the residue of the estate. Under any construction of the will, they were entitled to the residue upon the death of the widow even though that occurred before their arrival at the age of thirty years. If this circumstance has any significance at all, it must tend to the conclusion that although he desired to postpone the specific bequests until the sons had arrived at the age or ages mentioned in the will, he entertained no such intention with reference to the residuum of the estate, and we arrive at the same conclusion when comparing the disposition of the residuum of the estate with the specific bequest to the grandchild.

After an inspection of the terms of the will itself without discovering the intention of the testator as to when the bequests should vest, we are not only at liberty, but it is our duty, to invoke settled rules of construction for the purpose of ascertaining such intention. One rule of construction relied upon by respondents to sustain the construction placed

upon the will by the county court is stated in *Cashman v. Ross,* 155 Wis. 558, 560, 145 N. W. 199, as follows:

"But where there is a precedent life estate, and the devise or bequest is not direct to those who are to take in remainder, leaving the period of enjoyment to commence only after the termination of a precedent life estate, but the bequest or devise is in the form of a direction or an expressed purpose that at the termination of the precedent estate the property shall be divided between certain persons specified, that circumstance is held to effectually displace the presumption as to immediate vesting, and create the presumption, nothing appearing clearly to the contrary, that the intention of the testator was that the estate in remainder should not vest until the time for division and distribution should arrive."

This doctrine was first written into the jurisprudence of this state in *Moran's Will,* 118 Wis. 177, 96 N. W. 367, from which it was quoted in the *Cashman Case.* The provision of the will under consideration in the *Moran Case* was as follows:

"To my beloved wife [certain described lands] now possessed by me, during the term of her natural life and after her death to be divided equally among my children who may survive.

"I also wish my sister Julia Dolan to have an equal share of the above property with my children, if she survives the death of my wife."

The question under consideration was whether by the expression "equally among my children who may survive" the testator intended the children who survived his death or the children who survived the death of his wife. It was held that the language of the last paragraph relating to his sister indicated that the testator intended the children who should survive his wife. There was no necessity for invoking principles of construction, and we consider the elaborate discussion of principles relating to the construction of wills in that case as purely *obiter.* They were not necessary to the decision. Furthermore, the rule therein declared, which formed

the basis for the decision in the *Cashman Case,* finds rather
precarious support in the authorities cited, and our present
investigation leads to the conclusion that the doctrine is con-
trary to the overwhelming weight of authority. The fun-
damental rule seems to be that where a legacy is postponed
the time of vesting depends upon whether the postpone-
ment relates merely to the enjoyment of the legacy or
whether it is attached to the substance of the gift. Where
it is attached to the substance of the gift the vesting is post-
poned, but where the postponement relates merely to the en-
joyment of the gift, vesting takes place as of the date of the
death of the testator. Whether it is for one purpose or the
other is sometimes a difficult question, but it is well settled
that where a future gift is postponed in order to let in some
other interest or, as it is sometimes expressed, for the benefit
of the estate, the gift is vested although the enjoyment is
postponed. Note, L. R. A. 1915 C, 1049.

Thus, in *Williams v. Williams,* 135 Wis. 60, 115 N. W.
342, it is said:

"Estates legal and equitable given by will should always
be regarded as vesting immediately, unless the testator has
by very clear words manifested an intention that they should
be contingent upon a future event; and where the time of
payment or distribution is merely postponed for the con-
venience of the fund or property, or to let in others, the vest-
ing will not be deferred until that period." See, also, *Scott
v. West,* 63 Wis. 529, 24 N. W. 161, 25 N. W. 18; *Baker v.
Estate of McLeod,* 79 Wis. 534, 48 N. W. 657.

That this rule applies to bequests in the form of a di-
rection to pay at a future period, if the payment be post-
poned for the convenience of the estate or to let in some
other interest, is established by numerous decisions through-
out this country. Thus in *Scofield v. Olcott,* 120 Ill. 362,
at p. 373, 11 N. E. 351, it is declared:

"But even though there be no other gift than in the di-
rection to pay or distribute *in futuro,* yet, if such payment

or distribution appear to be postponed for the convenience of the fund or property, as where the future gift is postponed to let in some other interest, for instance, if there is a prior gift for life, or a bequest to trustees to pay debts, and a direction to pay upon the decease of the legatee for life, or after payment of the debts, the gift in remainder vests at once, and will not be deferred until the period in question.   But where the payment is deferred for reasons personal to the legatee, the gift will not vest till the appointed time. . . .  In other words, if the reason for the postponement is the position of the fund, the bequest in remainder vests at once; but if it is the position of the legatee, the remainder is contingent."

Mr. Jarman, in his work on Wills (6th ed., Bigelow), vol. 1, p. 813 [*798], says:

"But even though there be no other gift than in the direction to pay or distribute *in futuro*, yet if such payment or distribution appear to be postponed for the convenience of the fund or property, the vesting will not be deferred until the period in question.   Thus, where a sum of stock is bequeathed to A. for life; and, after his decease, to trustees, upon trust to sell and pay and divide the proceeds to and between C. and D., or to pay certain legacies thereout to C. and D.; as the payment or distribution is evidently deferred until the decease of A., for the purpose of giving precedence to his life interest, the ulterior legatees take a vested interest at the decease of the testator.   This doctrine prevails as well in gifts to a class as to individuals."

Similar quotations could be multiplied from the authorities.   The principle is declared in Rood, Wills, § 590; 2 Underhill, Wills, § 865; 2 Schouler, Wills (6th ed.) § 1274; *Roosa v. Harrington,* 31 Misc. 529, 65 N. Y. Supp. 601; *Knight v. Pottgieser,* 176 Ill. 368, 52 N. E. 934; *Heilman v. Heilman,* 129 Ind. 59, 66, 28 N. E. 310; *Cropley v. Cooper,* 86 U. S. 167; *McArthur v. Scott,* 113 U. S. 340, 5 Sup. Ct. 652; *Atchison v. Francis,* 182 Iowa, 37, 165 N. W. 587.   In the case last cited is found an industrious

collation of authorities upon this question, and we may well discharge our duty in this respect by a mere reference to the opinion in that case. It is there said:

"There is a class of cases in which legacies given to be divided and paid at a future day to persons named, or to a designated class of persons who shall then be living, or where by the terms of the will such restriction is fairly to be implied, no right vests under such gifts until the appointed time arrives, and the remainder in such cases will be regarded contingent. But where the postponement is made merely to let in a life estate or serve the convenience of the estate in any other respect, and there is no restriction of the devise in favor of survivors or of persons or classes to be determined *in futuro,* then the postponement affects not the vesting of the legatee's right to the gift, but only the right of its present delivery or enjoyment. . . . If we first look to jurisdictions other than our own, we find, with very few exceptions, a unanimous holding that in such cases the beneficiaries named acquire a vested right therein immediately upon the death of the testator. . . . Indeed, we may say with confidence that, outside of the states of New York and Wisconsin, the decisions are practically unanimous in adhering to the rule as we here apply it, and that a direction to pay over the remainder after the death of the life tenant is treated as a sufficient expression of an intent to give a vested estate therein."

This principle, so thoroughly established and intrenched in the jurisprudence of this country, is clearly in promotion of that "sound policy and practical convenience" which requires that titles should be vested at the earliest period. *Cashman v. Ross,* 155 Wis. 558, 145 N. W. 199, is plainly out of harmony with this doctrine. It is the only case in this court, however, in which the doctrine announced in the *Moran Case* has had a decisive influence upon the decision of the court. Convinced as we are that the *Cashman Case* is not only strikingly out of harmony with the well-nigh universal doctrine but subversive of that sound public policy

which calls for an early vesting of estates, we are constrained to overrule it so far as it is in conflict with the doctrine herein announced.

In the instant case it is plain that the postponement was merely for the purpose of letting in the life interest which the testator bequeathed to the widow, and that under the rule of practically all of the authorities the residuum of the estate vested in the children as of the date of the death of the testator.

*By the Court.*—Judgment reversed, and cause remanded with instructions to construe the will as herein indicated.