WILL OF REIMERS: SCHROETER, Appellant, vs. REIMERS, Administrator, Respondent.

*January 11—February 9, 1943.*

234

236

For the appellant there was a brief by *Higbee & Higbee,* and oral argument by *C. L. Baldwin* and *Otto O. Marquardt,* all of La Crosse.

For the respondent there was a brief by *Hale & Skemp* of La Crosse, and oral argument by *Quincy H. Hale.*

Martin, J.   Detlef Reimers left surviving his widow, Caroline (also known as Lina) Reimers, and two children—

a son, Fred H., aged thirteen, and a daughter, Charlotte, aged fifteen. Both grew to maturity and married. The daughter Charlotte, at the age of thirty years, married Adolph W. Schroeter on July 8, 1922. There were no children of this marriage and Charlotte Reimers Schroeter died intestate on November 3, 1923, survived by her husband, Adolph W. Schroeter. In its decision the county court said:

"We must therefore conclude that Detlef Reimers in his will intended that his children should take nothing or any portion of his estate or any right therein until and after the death of the widow, and that the daughter, Charlotte, having predeceased the widow, the estate of Charlotte Reimers [Schroeter] is entitled to no portion of the residue of the estate of Detlef Reimers.

"We must further conclude that Fred Reimers, sole surviving son of Detlef Reimers, is solely entitled to receive the residue of the estate of Detlef Reimers as sole heir at law thereto."

Accordingly, it was ordered and adjudged "that Fred H. Reimers is the sole remaining heir and beneficiary of. the residue of the estate of Detlef Reimers entitled to receive the same under and pursuant to the terms of the will of said Detlef Reimers."

Appellant contends that since the will contains no clear expression to the contrary, the estate in remainder to the daughter Charlotte vested indefeasibly at the death of testator. If this contention is correct the estate in remainder vested in the daughter Charlotte at the death of her father; and the estate in remainder upon her death passed to her heir at law, her husband, appellant herein. On the other hand, respondent contends that the language of the will is clear and unambiguous and shows that testator intended his estate to descend to his children upon the death of his wife. If this contention is correct, the daughter Charlotte having predeceased her mother, the surviving husband of Charlotte and her heir at law would not share in the estate of Detlef Reimers, deceased.

The court below was of the opinion that the instant case is ruled by the case of *In re Albiston's Estate,* 117 Wis. 272, 94 N. W. 169. While a dissenting opinion does not determine the law of the case, it is important to note that in the *Albiston Case,* Mr. Chief Justice CASSODAY, in a dissenting opinion, pointed out that the rule there announced was against the great weight of authority in this country and England, citing many cases theretofore decided by this court.

Future estates are either vested or contingent. They are vested when there is a person in being who would have immediate right by virtue of it, to the possession of the lands upon the ceasing of the intermediate or precedent estates ; they are contingent while the person to whom, or the event upon which, they are limited to take effect remains uncertain. Sec. 230.13, Stats. If a woman shall die leaving no issue, her estate shall descend to her husband, if she shall have one at the time of her decease. Sec. 237.01 (2). So far as here applicable to the facts, sec. 318.01 (1) provides the same rule for descent of personal property as applies to realty.

The rule applied in the *Albiston Case, supra,* was followed in *In re Moran's Will,* 118 Wis. 177, 96 N. W. 367 ; and in *Cashman v. Ross,* 155 Wis. 558, 145 N. W. 199, the same rule was applied. The latter case was an action for partition of real estate. The evidence showed that in 1882 one Mathias Ross was the owner of the real estate in question ; that he then made a will reading in part as follows :

"I hereby give and bequeath to my wife, Katie Ross, all my real and personal property (after the payment of my just debts) to have and to hold during her natural life. After her death the said property to be divided equally between my children."

Ross died shortly after executing his will and it was admitted to probate. Katie Ross, his widow, died intestate June 16, 1910. In September, 1905, Margaret Ross, who was a daughter of the testator, married Cashman, the plaintiff, and

in October, 1907, she died without issue, leaving plaintiff her sole heir. The sole question in the case was whether, under the language of the will above quoted, any estate or interest in the lands vested in Margaret Ross Cashman at the death of the testator, or before the death of the life tenant, Katie Ross, the widow of testator. If an estate or interest vested in the daughter, Margaret Ross Cashman, at the time of the death of her father, the plaintiff as her sole heir could maintain the partition action. On the other hand, if no interest or estate vested in the remaindermen until the death of the life tenant, plaintiff, since his wife Margaret died before the life tenant, had no interest in the lands and therefore could not maintain partition. At page 559 the court said:

"The question must be solved, primarily, by the language of the will itself. If the intention of the testator is clear as to when the estate vests, the statute relating to the vesting of estates cannot affect it. *Moran's Will,* 118 Wis. 177, 193, 96 N. W. 367. The will of testator contains no words of present gift or devise to the children. It creates a life estate in the wife and then directs that upon the termination of such estate, that is, after her death, the property is to be divided equally between his children."

The court at page 560 then quotes as follows from *Moran's Will, supra:*

"But where there is a precedent life estate, and the devise or bequest is not direct to those who are to take in remainder, leaving the period of enjoyment to commence only after the termination of a precedent life estate, but the bequest or devise is in the form of a direction or an express purpose that at the termination of the precedent estate the property shall be divided between certain persons specified, that circumstance is held to effectually displace the presumption as to immediate vesting, and creates the presumption, nothing appearing clearly to the contrary, that the intention of the testator was that the estate in remainder should not vest until the time for division and distribution should arrive."

The court held that the provisions of the Ross will did not create a present devise to the children; that it was a direction that after the termination of the life estate the property should be divided between them, and nothing appeared in the will to indicate that any vesting of interest should precede the right to the enjoyment of the estate.

It should be noted that in *Will of Roth,* 191 Wis. 366, 373, 210 N. W. 826, the court refers to the decision in *Cashman v. Ross, supra,* as being out of harmony with the general rule. The court said:

"It is the only case in this court, however, in which the doctrine announced in the *Moran Case* has had a decisive influence upon the decision of the court. Convinced as we are that the *Cashman Case* is not only strikingly out of harmony with the well-nigh universal doctrine but subversive of that sound public policy which calls for an early vesting of estates, we are constrained to overrule it so far as it is in conflict with the doctrine herein announced."

The rule followed in the *Albiston Case, supra,* as well as in the *Moran* and *Cashman Cases, supra,* is overruled in so far as it conflicts with the rule in *Will of Roth, supra.* In *Will of Roth* the provisions of the will in question read as follows:

"All of my estate not specifically given, devised, or bequeathed, I give, devise, and bequeath unto Rachel Roth, Max Pereles, and Mabel Roth, and to the survivor of them, in trust, for the following purposes, to wit:

"My said trustees shall pay annually the sum of $200 per year to my sister, Anna Neufeld, during the term of her natural life.

"My said trustees shall pay over to my said wife all income of every nature, kind, or description that may arise from any and all sources of my estate, and the same shall be paid to her monthly.

"Upon the death of my wife the said trustees shall distribute the said trust estate equally among my children."

Testator (Leo Roth) left surviving his widow, Rachel Roth, and four children: Bertie Roth Pereles, Mabel Roth, Stanley Roth, and Carnot Roth. He made specific bequests to his four children, to a grandchild, to each of two sisters, and to his brother. Then followed the provisions of the will above quoted as to the balance of his estate left after the payment of the specific bequests. The widow, Rachel Roth, died August 13, 1924. The son Carnot predeceased her on February 25, 1923. Carnot left surviving his widow, Sylvia Roth, and two children. In 1925 the trustees of the estate of Leo Roth petitioned the county court for a construction of the will. The question was whether the bequest to the children of Leo Roth, under the last clause in that part of the will quoted above, was vested as of the date of the death of the testator, or whether vesting was postponed until the death of the widow. The county court held that such bequest did not vest until the death of the widow. Sylvia Roth, as administratrix of her husband's estate, and as guardian of the two minor children, appealed. In reversing the judgment of the lower court, speaking through Justice OWEN, at page 371, the court said:

"The fundamental rule seems to be that where a legacy is postponed the time of vesting depends upon whether the postponement relates merely to the enjoyment of the legacy or whether it is attached to the substance of the gift. Where it is attached to the substance of the gift the vesting is postponed, but where the postponement relates merely to the enjoyment of the gift, vesting takes place as of the date of the death of the testator. Whether it is for one purpose or the other is sometimes a difficult question, but it is well settled that where a future gift is postponed in order to let in some other interest or, as it is sometimes expressed, for the benefit of the estate, the gift is vested although the enjoyment is postponed."

Citing *Williams v. Williams,* 135 Wis. 60, 115 N. W. 342, the court quoted as follows:

"Estates legal and equitable given by will should always be regarded as vesting immediately, unless the testator has by very clear words manifested an intention that they should be contingent upon a future event; and where the time of payment or distribution is merely postponed for the convenience of the fund or property, or to let in others, the vesting will not be deferred until that period." Citing *Scott v. West,* 63 Wis. 529, 24 N. W. 161, 25 N. W. 18; *Baker v. Estate of McLeod,* 79 Wis. 534, 48 N. W. 657.

The court further said (p. 373) :

"This principle, so thoroughly established and entrenched in the jurisprudence of this country, is clearly in promotion of that 'sound policy and practical convenience' which requires that titles should be vested at the earliest period." To the same effect see *Will of Owens,* 164 Wis. 260, 264, 159 N. W. 906; *Will of Fouks,* 206 Wis. 69, 238 N. W. 869; *Will of Grotenrath,* 215 Wis. 381, 385, 254 N. W. 631; *Will of Greene,* 240 Wis. 452, 458, 3 N. W. (2d) 704; 33 Am. Jur. pp. 565, 566, secs. 109, 110.

Respondent argues that there is no ambiguity in testator's will; that the language employed clearly states the intention of the testator that his property shall not descend to his children until the death of his wife. Emphasis is put on the sentence, "Upon the death of my wife, my estate . . . shall descend . . . unto my children." Under the rule stated in the authorities above cited, the court must determine the sense in which the words "shall descend" were used by testator. In *Perkinson v. Clarke,* 135 Wis. 584, 116 N. W. 229, the will there in question read as follows :

". . . I will and bequeath unto my beloved husband, John C. Clarke, if he shall survive me, all the estate of every kind, real and personal, of which I may die seized, with full power to sell or dispose of the same absolutely as he may see fit, and to use and enjoy during the time of his natural life and upon his decease, I further will and direct that such of my estate as shall remain *shall descend* to my four children [naming them], share and share alike, and to their heirs forever,

provided that in the event of any or either of my said children dying before I do, or dying without issue living, then the share of the one so dying is to be equally divided amongst the survivors and in case of their dying leaving issue living, the share to descend to such issue." (Vol. 891, Cases and Briefs, Wisconsin State Library.)

The court held that the will created a life estate in the husband, with power of sale for the purposes designated, and vested the remainder, if any, of the property, or its proceeds, in the children as of testator's death.

In *Lingo v. Smith,* 174 Iowa, 461, 156 N. W. 402, the will contained the following sentence: "I also give, devise and bequeath to my said wife a life interest in and to my farm (describing it), to use and occupy and control as her own during her natural lifetime and on her death *to descend* to my two youngest children, William A. and Marcus." At page 466 the court said:

"It is said in the first clause that the farm is 'to descend' to the sons, and in the last that 'they shall inherit.' Though these words are not employed in a technical sense, they do indicate an intention, not only that these children take directly from the testator, but upon his death. In event of intestacy, the descent or inheritance is immediate upon death, and, as used in this will, which speaks as of the date of testator's death, the words may well be construed as expressing the testator's design that the fee pass upon his death to William and Marcus. Otherwise, title must have stood in abeyance pending the life estate. The law favors a construction that a remainder is vested, rather than contingent, for that the convenience of beneficiaries and the interests of society are opposed to tying up property and thereby withdrawing it from the ordinary channels of commerce. To this end, all estates will be regarded as vested unless a condition precedent thereto is so clearly expressed that it cannot be regarded as vested without doing violence to the language of the will. To effectuate this rule, words of seeming condition are, if possible, to be construed as postponing the time of enjoyment."

The following cases all involve bequests of such portion of testator's estate as might remain after the life tenant's death to designated beneficiaries. In each case it was held that vesting was not suspended, but that vesting took effect immediately on testator's death. See *In re Cowley's Will*, 120 Wis. 263, 97 N. W. 930, 98 N. W. 28; *Williams v. Williams, supra; Will of Olson*, 165 Wis. 409, 162 N. W. 429; *Will of Griffiths*, 172 Wis. 630, 179 N. W. 768.

We conclude that the estate in remainder to the daughter Charlotte Reimers Schroeter and Fred H. Reimers vested at the death of their father, and that the estate in remainder, upon Charlotte's death, passed to her husband, her only heir at law; that the husband is therefore entitled to his interest in the $16,000 which the widow, Caroline Reimers (also known as Lina Reimers), had in her possession at the time of her death, which is referred to in her will, which sum she directs her executor to pay to the legatees mentioned in the will of her husband, Detlef Reimers, according to the terms of that will. If there be any other assets belonging to the estate of Detlef Reimers, Adolph W. Schroeter, is entitled to his one-half interest. The judgment of the lower court must be reversed.

Appellant contends that there was an abuse of discretion in the appointment of Fred H. Reimers as administrator *de bonis non* of the estate of his father. This contention is made on the theory that there is a conflict of interest in the son's acting as the executor of his mother's will and as administrator *de bonis non* of his father's estate; and that because of this alleged conflict the son cannot fairly represent the assumed conflicting interests. It is further contended that Fred H. Reimers is a nonresident and that he has no property in Wisconsin. Sec. 311.02 (1), Stats., provides as follows:

"Administration of the estate of an intestate shall be granted to one or more of the persons hereinafter mentioned,

and they shall be respectively entitled to the same in the following order:

"(1) The widow, widower or heirs, or both, as the county court may think proper, or such person as they may request, if suitable and competent to discharge the trust. . . ."

The appointment of an administrator *de bonis non* with the will annexed is subject to the above statutory provisions applicable to the appointment of any administrator. Sec. 310.20, Stats., so far as here material, provides:

"(1) When an executor or administrator shall die, or his authority shall be otherwise terminated, the remaining executor or administrator may execute the trust; if there shall be no other executor or administrator the court shall grant administration of the estate not already administrated. . . .

"(2) Whenever an administrator *de bonis non* is appointed the court shall cite him and his predecessor or the latter's personal representative to appear at a stated time and place to settle the predecessor's account; upon such settlement the property of the estate shall be paid and delivered to the new administrator."

In *Estate of Bartz,* 207 Wis. 639, 643, 242 N. W. 171, the court said:

"The paramount object and purpose of our statute, and of all statutes, in fixing the order of preference in which letters of administration shall be granted, is to secure to those having a beneficial interest in the property to be administered upon the right to administer. It is to be supposed that those who will reap the benefit of a wise, speedy, economical administration of the estate, or, on the other hand, suffer the consequence of waste, improvidence, or mismanagement, have the highest interest and most influential motive to administer the property correctly. The right to administer follows the right to the personal property."

Appellant argues that Fred H. Reimers and his children are to receive upwards of ninety-nine per cent of his mother's substantial estate and for that reason he will be disinclined to effect recovery in behalf of the Detlef Reimers estate. It

appears without dispute that the mother, as executrix of her husband's will, had in her possession at the time of her death $16,000 admittedly belonging to her husband's estate. In her will she directs her executor to pay said sum to the legatees mentioned in her husband's will.

Appellant contends that there are additional assets for which an accounting must be made to the administrator *de bonis non* of Detlef Reimers' estate, and that Fred H. Reimers as administrator *de bonis non* of that estate may possibly cover up, or at least not disclose, all of the assets which belong to the Detlef Reimers estate. It seems to us that that is an assumption without justification. It appears that Fred H. Reimers as administrator *de bonis non* was required by the county court to furnish a bond in the sum of $15,000 for the full and faithful performance of his duties as such administrator; and that he has furnished such bond. Appellant has had, or will be entitled to, the accounting as provided in sub. (2) of sec. 310.20, Stats., above quoted.

While it is the policy of our law not to favor the appointment of a nonresident as administrator, nonresidence is not an absolute disqualification to so act. *Estate of Sargent,* 62 Wis. 130, 133, 22 N. W. 131. In *Estate of Svacina,* 239 Wis. 436, 447, 1 N. W. (2d) 780, the court said:

"Residence in Wisconsin is not required to make appellant legally competent to act as executrix under sec. 310.12, Stats. But under sec. 324.35 if appellant, subsequent to her appointment and qualifying as executrix, should during the course of the administration of the estate reside out of this state, her then nonresidence may be taken into consideration by the court if an application be made for her removal for the reason stated in said section."

We conclude that the court below did not abuse its discretion in the appointment of Fred H. Reimers as administrator *de bonis non* of his father's estate, and the order so appointing him must be affirmed.

*By the Court.*—The order of June 2, 1942, appointing Fred H. Reimers as administrator *de bonis non* with the will annexed of the estate of Detlef Reimers, deceased, is affirmed. The judgment entered July 30, 1942, whereby it was ordered and adjudged that Fred H. Reimers is the sole remaining heir and beneficiary of the residue of the estate of Detlef Reimers, entitled to receive the same under and pursuant to the terms of the will of said Detlef Reimers, is reversed, with costs to appellant, and cause remanded with directions to enter judgment construing the will of Detlef Reimers, deceased, in accordance with this opinion.