ESTATE OF WADLEIGH: WILSON, Appellant, vs. DIXON and others, Respondents.

*February 27—April 8, 1947.*

For the appellant there was a brief by *Johnson & DeBaufer* of Whitewater, and oral argument by *Easton Johnson*.

For the respondents there was a brief by *Alfred L. Godfrey* of Elkhorn and *Robert C. Bulkley* of Whitewater, and oral argument by *Mr. Godfrey*.

FRITZ, J.    Anna Fuller Wilson, the petitioner for the construction of the will of Marcus H. Wadleigh, deceased, was his surviving wife and sole heir at law.    Subsequent to his death she became the wife of Harry B. Wilson.    Dr. Ralph H. Dixon was designated in Wadleigh's will as the executor thereof, and he was duly appointed and acted as such executor

until his death. Thereupon Anna Fuller Wilson was appointed and qualified as the administratrix *de bonis non* with the will annexed; and as such administratrix she filed a petition for the construction of the will and subsequently appealed from the judgment construing it.

By provisions in paragraph 2 of the will the testator devised and bequeathed the use of all of his estate to his wife Anna for and during her lifetime with the exception of a house and lot on Boone street, the use of which he bequeathed to his sister-in-law for her lifetime; and he devised and bequeathed that property upon her death to Irving Wilbur or his heirs. The testator also bequeathed to Wilbur, upon the death of testator's wife, his household effects and furniture and the use of $1,500 as long as Wilbur lives and upon his death this sum was to be paid to Wilbur's children. In paragraph 3 of the will the testator provided that his wife Anna "shall have the right to encroach upon the principal if it is necessary for her comfortable maintenance and support during her lifetime."

In paragraph 4 the testator provided:

"Upon the death of my wife Anna, what remains of my estate at that time shall be disposed of as follows:

"(a) I give and bequeath to Dr. Ralph H. Dixon or his heirs the sum of one thousand ($1,000) dollars." And in subdivisions (b), (c), and (d) three specific legacies were bequeathed to three other parties. Then in subdivision (e) of paragraph 4 the testator provided: "All the rest, residue and remainder of my estate at the time of the death of my wife Anna, I give, devise and bequeath to Dr. Ralph H. Dixon and desire and authorize him to make such disposition of it as he sees fit. I have had many conversations with Dr. Ralph H. Dixon during my lifetime as to the disposition of my property and I hereby give the said Dr. Ralph H. Dixon full power and authority to dispose of my estate to assist any needy relatives or others, including or intending to include charitable institutions, if it is the judgment of the said Dr. Ralph H. Dixon that it should be disposed of in that manner. I hereby nominate and appoint Dr. Ralph H. Dixon, executor of this my last

will and testament without bond and I hereby authorize and empower the said Dr. Ralph H. Dixon to sell any or all real estate of which I may die seized, and execute good conveyance therefor, with the exception of the real estate on Boone street, Whitewater, Wisconsin, which has been specifically disposed of in this will."

No sale or disposition of the testator's property was made up to the time Dixon died intestate, survived by his widow and three children, who constitute his heirs at law. In addition to the testator's wife Anna, his other surviving relatives are thirty cousins.

Judge Luce concluded in his written decision, and the judgment entered pursuant thereto provided, that under the provisions in subdivision (e) of paragraph 4 of the will Dixon acquired a vested interest in the remainder of Wadleigh's estate described in that subdivision, and that the interest thus acquired by Dixon passed upon his death to his widow and children, as his heirs at law and next of kin.

By and under the clear and unambiguous terms and provisions in Wadleigh's will there was given, devised, and bequeathed to his wife Anna *"for and during her lifetime"* the *use* of all of his estate, real, personal, and mixed, with the exception of the house and lot on Boone street, and she was given "the right to encroach upon the principal, if it is necessary for her comfortable maintenance and support during her lifetime." The provisions to that effect clearly and definitely state and show exactly the portion and the nature and extent of the estate that Wadleigh intended his wife should have; and those provisions definitely limited her use thereof to only "for and during her lifetime," with the right on her part, however, to encroach upon the principal "if it is necessary for her comfortable maintenance and support during her lifetime." Then, in relation to what remains of the estate at the time of his wife's death he provided by subdivisions (a), (b), (c), and (d) in paragraph 4 of his will for the payment of four

specific legacies to four legatees, including the sum of $1,000 which he stated "I give and bequeath to Dr. Ralph H. Dixon or his heirs." And following those provisions, the testator by the terms used in subdivision (e) of paragraph 4 of the will:

"All the rest, residue and remainder of my estate at the time of the death of my wife Anna, I give, devise and bequeath to Dr. Ralph H. Dixon and desire and authorize him to make such disposition of it as he sees fit."

definitely vested in Dixon personally the remainder of the testator's estate and, in connection therewith, expressly authorized Dixon "to make such disposition of it as he sees fit." Under the terms thus used there clearly was no enforceable duty imposed upon Dixon by the testator in relation to the property which constituted the remainder in question. On the contrary, it is clearly evident from the clause last quoted that the testator did not intend to impose any such duty. Consequently, there is applicable thereto under the circumstances herein the rule that,—

"If property is transferred to a person to be disposed of by him in any manner or to any person he may select, no trust is created and the transferee takes the property for his own benefit." Restatement, 1 Trusts, pp. 315, 316, sec. 125.

As is stated in the "Comment" to that section,—

"a. . . . Whether the transferor has manifested an intention to give property to a person in trust or to give it to him for his own benefit is a question of interpretation of the transferor's language in the light of all the circumstances. No trust is created if the transferor does not manifest an intention to impose enforceable duties upon the transferee. His intention not to impose enforceable duties may be shown by the fact that he uses precatory rather than mandatory words. . . .

"*Illustrations:* . . . 2. A bequeaths $100,000 to B to be disposed of to such persons and in such manner and in such sum or sums of money as he in his discretion shall think proper. B takes the money for his own benefit."

No intention on the part of the testator to impose an enforceable duty upon Dixon as to any particular purpose or use of property bequeathed and devised to him is disclosed by or can be inferred from the statement in the will,—

"I have had many conversations with Dr. Ralph H. Dixon during my lifetime as to the disposition of my property, and I hereby give the said Dr. Ralph H. Dixon full power and authority to dispose of my estate to assist any needy relatives or others, including or intending to include charitable institutions, if it is the judgment of the said Dr. Ralph H. Dixon that it should be disposed of in that manner."

Instead, here again it is obvious from the language used in the final clause, "if it is the judgment of the said Dr. Ralph H. Dixon that it should be disposed of in that manner," that the testator did not intend to impose upon Dixon an enforceable duty. At most, the words used might be deemed to impose a moral duty which left Dixon free, however, from any legal obligation to dispose of the property for any purpose which may have been stated in some conversation. Throughout the language in the will, from the words "I . . . authorize him to make such disposition of it as he sees fit," which are used in the opening sentence of subdivision (e) of paragraph 4, to the final words in that paragraph, viz., "if it is the judgment of the said Dr. Ralph H. Dixon that it should be disposed of in that manner," there is no legal limitation or legal duty imposed upon Dixon. It left Dixon free from any legal obligation to make any application or disposition of the property willed to him by the testator. Consequently, under the facts and circumstances herein and the law applicable thereto the trial court rightly concluded that by and under the will there was created an estate in Dixon with the absolute power of disposition of the remainder of the property in question "as he sees fit," and that the estate so created vested in Dixon during his lifetime coupled with such absolute power of disposition by him; that by virtue thereof he acquired the

fee and vested right in the property subject to defeasement only to the extent and in the event of the widow's right of encroachment upon the principal if necessary under the conditions specified in the will; and that in the absence of such defeasement Dixon's heirs at law are entitled to the property in question.

In *Townsend v. Gordon,* 308 Mich. 438, 440, 444, 447, 14 N. W. (2d) 57, the provisions in a will under consideration read:

"5. The residue of my estate I leave to my executor, who shall dispose of same as he shall best determine.

"6. I direct that all of my property of which I may have title at the time of my death be sold and the proceeds disposed of as above outlined. . . .

"I do hereby name Glen C. Townsend, of Petoskey, Michigan, as executor of this, my last will and testament."

The court, in holding that the executor took the residue absolutely and beneficially, said,—

"The real question in the case, as we view it, is whether plaintiff took the residue absolutely and beneficially or merely as a trustee. . . . In coming to our conclusion, we have not overlooked the fact that the legatee may have had a verbal understanding with the testator which the legatee subsequently may violate. Certain defendants claimed in their answer, that Mr. Townsend was to use the proceeds of the estate in order to assist testator's needy relatives. Should he fail to do so, they would have no legal redress under the terms of the will. The only way such a breach of a moral understanding could be guarded against would be by a proper legal instrument, or by not using the broad terms contained in the will, which manifest the plain intent of the testator to give the residue to plaintiff in his individual capacity with the right and power to dispose of the proceeds as he may deem best."

The matters thus stated as basis for the court's conclusion are so similar to the circumstances in the case at bar that the conclusions can be considered likewise applicable to the statement in Wadleigh's will that,—

"I have had many conversations with Dr. Ralph H. Dixon during my lifetime as to the disposition of my property and I hereby give the said Dr. Ralph H. Dixon full power and authority to dispose of my estate to assist any needy relatives or others, including or intending to include charitable institutions, if it is the judgment of the said Dr. Ralph H. Dixon that it should be disposed of in that manner."

At most, the terms thus used in relation to Dixon's power and authority to dispose of the remainder in question are merely suggestive, without expressing any request, direction, or even desire, wish, or expectation. Consequently they are neither mandatory or imperative, but are merely precatory. Therefore there are applicable thereto the rules that,—

"Words which merely express a suggestion or wish that a transferee of property will make a certain disposition thereof do not, in the absence of other circumstances, cause the transferee's interest to be less than it would be without the precatory words . . . or cause a trust to be imposed upon the interest. . . ." (Restatement, 3 Property, p. 1839, sec. 323) ; and that "No trust is created unless the settlor manifests an intention to impose enforceable duties. . . . In determining the intention of the settlor the following circumstances among others are considered: (1) the *imperative or precatory character of the words used;* (2)," etc. (Restatement, 1 Trusts, p. 76, sec. 25.)

Appellant contends that the right to the remainder of the estate did not vest in Dixon during his lifetime because the vesting thereof in Dixon was postponed until the death of testator's wife, by reason of the words "at the time of the death of my wife," which are in the provision,—

"All the rest, residue and remainder of my estate at the time of the death of my wife Anna, I give, devise and bequeath to Dr. Ralph H. Dixon and desire and authorize him to make such disposition of it as he sees fit."

And appellant contends that because, under this provision, the distribution of that remainder by Dixon was deferred

until the death of testator's wife, no estate in the remainder could vest absolutely in Dixon until her death; and that as he predeceased her, no estate ever vested in him during his lifetime, and therefore his heirs acquired no interest therein. These contentions cannot be sustained.

By the provisions in the will Dixon was given a future estate in the remainder, and although his use and enjoyment thereof were deferred until the time of the death of testator's widow, the vesting of his right thereto was not conditioned by any provision in the will upon his being alive when she died. Consequently the estate given to Dixon was a vested estate under the definition in sec. 230.13, Stats., that,—

"Future estates are either vested or contingent. They are vested when there is a person in being who would have an immediate right, by virtue of it, to the possession of the lands upon the ceasing of the intermediate or precedent estate. They are contingent whilst the person to whom, or the event upon which, they are limited to take effect remains uncertain."

At the time the testator died and his will became effective, Dixon was a person in being who would have an immediate right to the possession of the estate in question upon the ceasing of the widow's intermediate or precedent life estate; and when the will became effective, neither the person to whom, nor the event upon which, Dixon's estate was limited to take effect remained uncertain. These conclusions are in accord with the decisions in *Will of Roth,* 191 Wis. 366, 210 N. W. 826; *Will of Reimers,* 242 Wis. 233, 7 N. W. (2d) 857; *Estate of Downs,* 243 Wis. 303, 9 N. W. (2d) 822. In the *Roth Case, supra,* the court held:

"Where a will, after specific bequests, gave the residue of testator's estate to a named person in trust to pay the income to testator's widow, and on her death to distribute the trust estate equally among testator's children, the children took a vested interest in the residue, although the enjoyment was postponed." (Syllabus.)

The court said:

"The fundamental rule seems to be that where a legacy is postponed the time of vesting depends upon whether the postponement relates merely to the enjoyment of the legacy or whether it is attached to the substance of the gift. Where it is attached to the substance of the gift the vesting is postponed, but where the postponement relates merely to the enjoyment of the gift, vesting takes place as of the date of the death of the testator." (p. 371.)

"In the instant case it is plain that the postponement was merely for the purpose of letting in the life interest which the testator bequeathed to the widow, and that under the rule of practically all of the authorities the residuum of the estate vested in the children as of the date of the death of the testator." (p. 374.)

In accord therewith are the decisions in the *Reimers* and the *Downs Cases, supra.*

Appellant contends also that the testator did not intend that Dixon was to take any beneficial estate under subdivision (e) of paragraph 4 of the will; but that he was to have merely the power and authority to dispose of the remainder of the testator's estate. Appellant claims that if the testator had in mind Dixon was to take beneficially under the will, he would not have granted also full power and authority to dispose of the estate; that one does not have to have authority and power from another to dispose of his own property; and that as Dixon did not exercise that mere power during his lifetime the remainder should pass as intestate property of the testator to his heirs at law. Appellant's contentions and claims cannot be sustained.

By the provision in subdivision (e) of paragraph 4 the remainder therein referred to was given to Dixon, as stated above, without the imposition of any limitation upon his power of disposition thereof or any obligation to dispose of the property at all unless he, in his own judgment felt that it should be disposed of. Powers which give to the donee the right to

keep or to dispose of property are the same as powers which arise as an incident of ownership, and such powers do not terminate upon the donee's death. The donee of such a general power has such an interest in the property as to make him in substance the owner thereof; and so in this case the legal result of the general power granted by the testator to Dixon, as well as the provisions expressly devising and bequeathing to him the remainder in question, created in him an absolute estate therein. As the court said in *Will of Zweifel,* 194 Wis. 428, 435, 216 N. W. 840,—

"It is a general rule that 'where there is a gift to a person indefinitely, with a superadded power of disposal, the donee takes an absolute estate.' 31 Cyc. 1089."

See also sec. 232.10, Stats.; *Townsend v. Gordon, supra,* and authorities cited above.

*By the Court.*—Judgment affirmed.