ESTATE OF FERDINAND: ZENS, Executor, Appellant, v. FERDINAND and others, Respondents.

*June 1—June 26, 1959.*

For the appellant there was a brief and oral argument by *Harold J. McGrath* of Milwaukee.

For the respondents there was a brief by *Bernard F. Mathiowetz* of Milwaukee, for Angus B. Ferdinand and Harrold J. McComas, and by *Philip G. Marshall* and *Marjorie L. Marshall,* both of Milwaukee, for George H. Stroebel, and oral argument by *Mr. Mathiowetz.*

BROWN, J. Ferdinand's will, repeating its language in the 1926 judgment, does not empower the widow to dispose of the estate by will. The language clearly expresses contrary intent and her power of disposition is limited to its exercise while she lives and is unmarried. *Will of Zweifel* (1927), 194 Wis. 428, 216 N. W. 840. Rights of claimants now cannot be derived from the provisions of the widow's will.

The appellant submits that the intent of the testator as expressed in his will was to give to his widow an estate in fee subject to a contingent estate in the brothers and sisters surviving the widow. We are unable to agree with this. First, we do not read that intention in Ferdinand's will. Second, sec. 232.08, Stats., determines the estates created by powers of disposition in cases such as this. The statute reads:

"LIFE ESTATE, WHEN CHANGED TO FEE. When an absolute power of disposition, not accompanied by any trust, shall be given to the owner of a particular estate for life or for years such estate shall be changed into a fee, absolute in respect to the rights of creditors and purchasers, but subject to any future estates limited thereon in case the power should not be executed or the lands should not be sold for the satisfaction of the debts."

We have interpreted this statute in *Will of Zweifel, supra,* saying there (p. 436):

"The will, as we interpret it, gives the widow absolute power of disposition, not accompanied by any trust. But the provisions in the will for the remainder of the estate existing at the death of the widow we think clearly express the intent of the testator to create a future estate in his heirs, as therein directed. The result, therefore, is to create a life estate, absolute in respect to the rights of creditors and purchasers, but subject to the future estate provided by the will. The statute only applies to real estate, but we think the statute shows the legislative purpose, which ought to be followed in the disposition of personalty."

What, then, are the future estates to which the fee is subjected when, as here, the power is not executed or the lands sold for the satisfaction of debts? Obviously, they are the estates provided by the will and carried into the 1926 judgment. These gave remainders to Ferdinand's brothers and sisters "or the survivor of them." Appellant interprets these future estates to be limited to those brothers and sisters who survived the *widow,* and since there were no such survivors appellant says that there are no future estates to which the widow's fee is subject. Respondents interpret the future estates to be those of testator's brothers and sisters who survived the *testator.* The trial court adopted that interpretation. It determined that all of the five named brothers and sisters so survived and the devise to the widow, by sec. 232.08, Stats., and by *Will of Zweifel, supra,* was sub-

ject to the future estates of the five brothers and sisters, to be defeated only by the widow's exercise of her power of disposition during her lifetime.

We concur in the trial court's judgment.

The primary question is to ascertain the event by which the testator meant the "survivors" to be established. In 114 A. L. R., beginning at page 4 and extending to page 113, there is an exhaustive note upon this subject, entitled: "Words of survivorship in will disposing of remainder upon termination of life or other precedent or intervening estate as referable to time of testator's death or to time of termination of such intervening estate." The note gives a great number of examples of the application of various principles and presumptions which led those courts to find one way or the other. The note states that (p. 13):

"Every case cited throughout the annotation is also authority for the statement that in every instance the testator's intent, when manifested, is to control, notwithstanding the particular presumption as to such intention adopted in the specific jurisdiction."

This is to say that when we discover the intent of the testator that intent will prevail and so-called rules of construction are merely guides and aids to the court in discovering it when the language the testator used leaves his intention uncertain.

Our first effort, then, is to scrutinize the will as it was incorporated in the 1926 judgment to find out, if possible, what Ferdinand and the trial court intended by this language. *Will of Yates* (1951), 259 Wis. 263, 271, 48 N. W. (2d) 601; *Will of Dolph* (1951), 260 Wis. 291, 296, 50 N. W. (2d) 448.

We reach the same conclusion as the learned trial court. The testator said that his widow should have the residue of his estate "during her natural life, while she shall remain un-

married." There is no intimation that she was to have anything or any interest in the property after her life had ended. The power he gave her was for her use, enjoyment, and protection while that power was of use to her, but when she no longer had use for it whatever property was left was to be divided among the named brothers and sisters, his nearest blood relatives.

There can be no reasonable inference that his wife's family was intended to be provided for in any respect *except* that the wife's sisters, Anna and Nellie, received limited bequests expressly conditioned upon those persons surviving the wife.

At this point the will again indicates that, in order to take, Ferdinand's brothers and sisters were not required to survive Catherine, the widow, for the testator did not so provide, as he did in the bequests to Anna and Nellie. The testator merely said that the brothers and sisters should survive, but not naming the person whom they must outlive. The trial court properly, as we think, observed that the language referring to Catherine's sisters differed from that used in reference to Ferdinand's blood relations and that indicated a difference in intention regarding them. The clear language of the will which required the wife's sisters to survive the wife is contrasted with the absence of such language affecting the testator's own relatives and it evidences Ferdinand's intention not to require that they survive the widow. In *Will of Friend* (1951), 259 Wis. 501, 49 N. W. (2d) 423, we held that the inclusion of language respecting certain heirs and the omission of it in respect to others manifested a testamentary intention to make distinction between them.

We conclude that Ferdinand's will, repeated in the 1926 judgment, evinces the intention that his named brothers and sisters be required to survive the testator but not to survive the widow, in order to vest the remainders provided for them, subject, of course, to defeasance if the widow ex-

hausted the remainders by exercising her power of disposition during her lifetime.

In so far as presumptions and so-called rules of construction are applicable to this appeal, we do not find them at variance with the decision of the trial court. Among such principles of construction are:

(1) Desire to avoid intestacy. The court will presume that the testator's use of words embodied the wish to devise his property rather than that his words intended to create an intestacy. The earlier determination of survivorship and the consequent vesting of remainders more certainly prevent intestacy than a postponement of such determination, possibly long after the death of the testator. We used this principle in *Will of Roth* (1926), 191 Wis. 366, 210 N. W. 826, and *Will of Reimers* (1943), 242 Wis. 233, 7 N. W. (2d) 857.

(2) There is a presumed intent of the testator not to disinherit his heirs thus presuming an intent by the testator to benefit *his* heirs rather than strangers, and that presumed intention is promoted by survivorship referable to the time of the testator's death rather than to the termination of some intervening estate.

Appellant relies strongly on *Will of Moran* (1903), 118 Wis. 177, 96 N. W. 367. The A. L. R. note already referred to, 114 A. L. R. 4, cites *Moran* at page 91, to attribute to Wisconsin a disposition determining survivorship as of the death of the life tenant. There the court thought there was nothing appearing upon the face of the will to indicate that the words of survivorship referred to any other event than that event. However, the language of the will in *Will of Reimers, supra,* is stronger to support vesting *after* the termination of the life estate than the language used in the *Moran* will; but nevertheless we held that survivorship was determined and the remainder vested at the death of the testator. There the share of a remainderman, who survived

the testator but did not survive the life tenant, passed to the remainderman's heir and we reversed the trial court which had held that the daughter dropped out of consideration when she did not survive the life tenant, taking the daughter's heirs out with her. In so reversing we expressly overruled *Estate of Albiston* (1903), 117 Wis. 272, 94 N. W. 169, and *Will of Moran, supra,* and we reiterated our overruling *Cashman v. Ross* (1914), 155 Wis. 558, 145 N. W. 199, which we had previously overruled by *Will of Roth, supra.* In *Will of Roth* we held that the remainders to the children vested at the testator's death, not at the death of the life tenant.

Such principles as we have found in our search reinforce the testator's intention which we have already gathered from the language of the will.

In conclusion, the language of the will as repeated in the 1926 judgment evidences the testator's intention that survivorship of these remaindermen is to be determined as of the testator's death, their future estates then vested and their enjoyment of the estates are only postponed, subject to defeasance by the complete execution of the widow's .power of disposal during her lifetime.

The judgment of the trial court should therefore be affirmed.

*By the Court.*—Judgment affirmed.

MARTIN, C. J., took no part.